[Civ. No. 23140. Fourth Dist., Div. Two. Apr. 3, 1981.]

JOHN PARKER, Cross-complainant and Appellant, v.
RICHARD E. MORTON, Cross-defendant and Respondent.

COUNSEL

Lewis, D'Amato, Brisbois & Bisgaard and R. Gaylord Smith for Cross-complainant and Appellant.

Breidenbach, Swainston, Yokaitis & Crispo, W. F. Rylaarsdam and Phillip J. Argento for Cross-defendant and Respondent.

OPINION

**KAUFMAN, Acting P. J.**—Appellant, defendant and cross-complainant, John Parker appeals from a summary judgment entered against him and in favor of cross-defendant Richard Morton on the cross-complaint for declaratory relief, implied indemnity and equitable apportionment.

The action began as a suit for legal malpractice by plaintiff, Lourdes Peterson, against her former attorney, Parker, who had represented her in a dissolution proceeding in 1972. Parker's alleged negligence was his failure to litigate in the dissolution action his client's community property interest in the vested military pension of her husband.

Parker filed a cross-complaint, the subject of this appeal, for total or partial indemnity against Morton, an attorney subsequently retained by Mrs. Peterson, in 1976, to remedy the problem of the unlitigated and undisposed military pension. The cross-complaint alleged that Morton failed to pursue the client's community property claim against her former husband and thereby caused or exacerbated the damages that the client seeks in her complaint against Parker.

Initially, Morton also represented the client in this action against Parker. However, after Parker obtained leave to file the cross-complaint against Morton the client filed a substitution of attorneys, substituting Dolores Graham as attorney of record in place of Morton.

■ On September 28, 1979, cross-defendant Morton moved for summary judgment on the ground that for policy reasons, an attorney such as Parker, who is sued by his previous client for malpractice, may not successfully cross-complain against the client's successor attorney retained to remedy the problem created by the alleged negligence of the first attorney. The trial court granted summary judgment and cross-complainant appeals.

There are, of course, a number of recent decisions that articulate one or more public policy arguments for such a rule. (E.g., *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818, 821-822 [156 Cal.Rptr. 679]; *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347, 355-356 [156 Cal.Rptr. 326]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934, 945-946 [155 Cal.Rptr. 393]; *Held* v. *Arant* (1977) 67 Cal.App.3d 748, 752-753 [134 Cal.Rptr. 422]; *Norton* v. *Hines* (1975) 49 Cal. App.3d 917, 922-923 [123 Cal.Rptr. 237].) Analysis discloses, however, that the "policy" considerations articulated in those decisions, even if appropriate there,[1] have no applicability to the circumstances presented by the case at bench. Moreover, denying a cross-complaint for partial equitable indemnity in the case at bench would be inconsistent with long established legal principles, themselves founded on important public policy considerations.

---

[1] Justice Jefferson, dissenting in *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d at page 360, urged with substantial justification: "[I]t is tenuous and speculative at best to conclude that permitting cross-complaints by lawyer I against lawyer II in a malpractice action against lawyer I will distort and adversely affect lawyer II's ability to devote his best efforts to serving his client. The *Goodman* [*Goodman* v. *Kennedy, supra*, 18 Cal.3d 335], *Held* [*Held* v. *Arant, supra*, 67 Cal.App.3d 748] and *Norton* [*Norton* v. *Hines, supra*, 49 Cal.App.3d 917] rationale rests on an unexamined and unpersuasive hypothesis, namely, the belief that the possibility of an attorney's liability to third parties for negligence in advising a client will inhibit an attorney's best representation of his client even in a situation where there is no conflict between the interest of the client and the third party." (See also the dis. opn. of Acting Presiding Justice Cologne in *Commercial Standard Title Co.* v. *Superior Court, supra*, 92 Cal.App.3d at p. 949.)

It is the general rule that a subsequent tortfeasor who by his negligence exacerbates the damages suffered by an already injured party may be named as a cross-defendant by the party whose negligence caused the original injury and who, therefore, may be held liable to the injured party for all of his damages including those resulting from the subsequent negligence. (*Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 75 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; see *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d at p. 354; see also *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-598 [146 Cal.Rptr. 182, 578 P.2d 899].) ■ This rule derives from several well-recognized legal principles all of which foster the public policy of encouraging persons to conduct themselves with reasonable care: that every person should be responsible for the consequences of his negligent conduct (Civ. Code, § 1714; see generally, *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 816-817 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]); that as between tortfeasors who contribute to a loss each shall bear the loss in proportion to his fault (see *American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578; *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d 347; *Herrero* v. *Atkinson, supra*, 227 Cal.App.2d at p. 75; *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230, 238-239 [116 Cal.Rptr. 733]); and that an injured person must himself take reasonable action to mitigate his damages (*Pretzer* v. *California Transit Co.* (1930) 211 Cal. 202, 208-209 [294 P. 382]; see Rest.2d Torts, § 918; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 870, p. 3158). Manifestly, the general rule allowing proportionate indemnity, subserving as it does this fundamental public policy, should not be departed from in the absence of compelling reasons. There are no real reasons for departing from the general rule in this case.

The seminal case upon which cross-defendant relies is *Norton* v. *Hines, supra*, 49 Cal.App.3d 917. Insofar as the circumstances of that case may be argued to be pertinent, the adverse party in an earlier lawsuit in which the defendant attorneys represented the plaintiff sued the attorneys for negligently advising their clients to initiate and prosecute the earlier lawsuit. Noting that privity between the plaintiff and the defendant attorneys was no longer strictly required (see *Lucas* v. *Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685]), the former adversary asserted that an attorney should be held liable in damages to any person who might forseeably be injured by the attorney's negligence. In other words, the plaintiff in the lawsuit against the attorneys

was claiming that the attorneys were negligent as to him in advising their client to sue him.

Not surprisingly, potential liability on the part of the attorneys on that basis was rejected, largely on public policy grounds. The court stated: "The attorney owes a duty to his client to present his case vigorously in a manner as favorable to the client as the rules of law and professional ethics will permit. . . . He is cognizant of the public policy that encourages his clients to solve their problems in a court of law. . . . We believe the public policy of favoring free access to our courts is still viable. However, if Norton's [the former adversary's] cause of action against attorneys for negligence is permitted, this policy will be subverted. The attorney must have the same freedom in initiating his client's suit as the client. If he does not, lawsuits now justifiably commenced will be refused by attorneys, and the client, in most cases, will be denied his day in court." (49 Cal.App.3d at pp. 922-923, fns. omitted.)

It is readily apparent that the *Norton* decision has little bearing on the case at bench. It was not an action by an allegedly negligent attorney against an allegedly successively negligent attorney whose successive negligence was alleged to have enlarged the damages for which the first attorney might be liable. The duty asserted was the duty of an attorney running to his client's adversary to exercise due care in advising his client to file suit, i.e., negligent (as opposed to malicious) prosecution. The court was undoubtedly correct in concluding that the public policy of affording free access to the courts for the resolution of private disputes precluded the imposition of a duty on the attorney's running to the former adversary other than to refrain from advising the institution of suit maliciously and without probable cause. (49 Cal. App.3d at pp. 921-923.)

The decision in *Goodman* v. *Kennedy, supra*, 18 Cal.3d 335, is much the same as that in the *Norton* case. The clients' adversaries sued the clients' attorney; the principal factual difference was that in *Goodman* the parties suing the attorney had not been the adversaries in a lawsuit but, rather, in a transaction in which the adversaries had purchased shares of stock from the clients. The court held the attorney could not be liable to the clients' adversaries because the duty owed by the attorney to his own clients to exercise reasonable care did not extend to the adverse parties. (18 Cal.3d at pp. 342-344.) In connection with an argument that the attorney's duty should extend to the adversary party, the

court stated: "To make an attorney liable for negligent confidential advice not only to the client who enters into a transaction in reliance upon the advice but also to the other parties to the transaction with whom the client deals at arm's length would inject undesirable self-protective reservations into the attorney's counselling role. The attorney's preoccupation or concern with the possibility of claims based on mere negligence (as distinct from fraud or malice) by any with whom his client might deal 'would prevent him from devoting his entire energies to his client's interests' ...." (18 Cal.3d at p. 344.)

As in *Norton*, which the *Goodman* court noted and quoted (18 Cal.3d at p. 344, fn. 5), the *Goodman* court's conclusion that the attorney's duty to exercise due care did not run to his clients' adversaries was undoubtedly sound. No claim for implied indemnity was involved or discussed in *Goodman*.

*Held* v. *Arant, supra*, 67 Cal.App.3d 748, did involve circumstances somewhat similar to but different in one essential from the case at bench. There an attorney was sued by his former client on allegations that the attorney's negligence in representing him in the negotiation and drafting of an agreement resulted in the client's being sued for misrepresentation in inducing the agreement. The defendant attorney sought to cross-complain against the attorneys employed by the client to represent him in respect to the situation created by the alleged negligence of the first attorney. The theory of the proposed cross-complaint was that the attorneys thus employed (the second attorneys) were negligent in advising the client to settle legally defensible claims in the misrepresentation action, as a result of which the first attorney was damaged by being exposed to liability for malpractice and injury to his professional reputation. The court quickly rejected the possibility that the second attorneys might be liable for direct negligence in respect to the first attorney because it concluded, citing earlier decisions including *Norton*, that the second attorneys owed no duty to exercise reasonable care with respect to the first attorney. (67 Cal.App.3d at p. 751.)

The court then proceeded to raise and reject the contention that the cross-complaint might be maintainable on the theory of equitable indemnity. Noting the general rule allowing implied indemnity where successive tortfeasors have caused losses for which the first in time is liable (*Herrero* v. *Atkinson, supra*, 227 Cal.App.2d 69, and *Niles* v. *City of San Rafael, supra*, 42 Cal.App.3d 230), the court said: "Dis-

tinctions between the situation presented in *Herrero* and *Niles* and peculiarities of the relationship between the attorney and client on the one hand, and a person in an adversary position to them on the other, dictate that the *Herrero-Niles* rule not be extended to the situation which is here involved. [¶] In the situation of successive acts of negligence by a tortfeasor and treating physician, the possibility that he may be sued by the original tortfeasor for indemnity in no way inhibits the performance of the professional duty by the physician. Whatever may be the effect of exposure to malpractice suits upon the performance of good medicine, it exists irrespective of the indemnity potential. Where, however, an attorney is retained to represent the interests of his client against persons who are actual or potential adversaries, the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel.[2]

"In the context of the case at bench, [the second group of attorneys] owed an undivided loyalty to [its client] to use its best judgment to extricate him from the situation created by [the first attorney's] advice. *Extrication involved consideration both of resistance of the claim of [the plaintiff in the misrepresentation action against the client] and of the assertion of an affirmative claim against [the first attorney]. [The second group of attorneys'] ability to choose between courses of conduct* best designed to protect the interests of its client cannot be inhibited by the proposition that if it chooses the course of resistance of the claim it will be immune from liability to the one adversary absent malicious prosecution ... while if it chooses the course of prosecuting the client's claim for malpractice against a prior attorney it may be subject to a claim to indemnify that attorney. [¶] We thus conclude that the nature of the relationship of attorney and client requires that the attorney retained to represent the client in a cause in which actual or potential adversaries include both a private person and a prior attorney not be subjected to the potentiality of being required to indemnify

---

[2]Try as we may, we cannot understand the reasoning of the court that an attorney would be more likely than a physician to be influenced in giving advice by the prospect of being sued for proportional indemnity for his negligent conduct. In our view a physician who undertakes to treat a patient for problems resulting from the negligence of another physician is in precisely the same position and will be influenced by precisely the same considerations as an attorney who undertakes to extricate a client from a predicament created by the negligence of another attorney. Certainly a physician owes to his patient the same duty of singleminded devotion and loyalty that an attorney owes to his client.

the prior lawyer in the event that the subsequent counsel advises settlement with the private party and the prosecution of a malpractice action against the first lawyer." (67 Cal.App.3d at pp. 752-753, fn. omitted; italics added.)

Thus, although it is questionable that that was the real gravamen of the cross-complainant, the court appears to have treated the case as one in which it was alleged that the negligence of the second attorney exacerbated the damages for which the first attorney could be liable. To that extent that case was like this one. However, there is an essential difference between the two cases.

As the court in *Held* v. *Arant* cogently pointed out, the negligence with which the second attorneys were charged in that case was in choosing between two alternative courses of action requiring the exercise of professional judgment. The rationale for the decision was that if the second attorneys could be held liable to the first attorney for negligence in making the choice, in future cases the choice to be made by the second attorney might well be influenced by consideration of his potential liability to the first and that that would conflict with his duty of undiluted devotion to the best interests of his client. But in the case at bench the negligence with which the second attorney is charged by the cross-complaint is not that he was negligent in choosing between two alternative remedies but that he exacerbated the client's damages by failing to pursue one of two available remedies which were not inconsistent with one another and presented no choice, which required no exercise of professional judgment, and one of which (the one not pursued) was required in all events both to protect the client's interests and to fulfill the client's obligation to mitigate the damages resulting from the first attorney's alleged negligence.

The negligence complained of in the cross-complaint is the second attorney's failure to advise the client to institute an action for division of the former husband's vested military pension benefits. When the client first employed the second attorney in 1976, it was well settled that the vested military pension constituted a community property asset (see *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal. Rptr. 369, 517 P.2d 449], cert. den., 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41], rehg. den., 419 U.S. 1060 [42 L.Ed.2d 657, 95 S.Ct. 644], and authorities cited therein); it was equally well settled that community property not dealt with or disposed of in the dissolution action was considered to be the joint property of the spouses, divisible in a subse-

quent separate action (*Estate of Williams* (1950) 36 Cal.2d 289, 292-293 [223 P.2d 248, 22 A.L.R.2d 716]; *In re Marriage of Elkins* (1972) 28 Cal.App.3d 899, 903 [105 Cal.Rptr. 59]; see *Wilkinson* v. *Wilkinson* (1970) 12 Cal.App.3d 1164, 1168 [91 Cal.Rptr. 372]; see also cases collected and approved in *Henn* v. *Henn* (1980) 26 Cal.3d 323, 330 [161 Cal.Rptr. 502, 605 P.2d 10]). It is undisputed that the military pension here involved was vested at the time of dissolution and that the pension was not dealt with or disposed of in the dissolution action. The pension payments were ongoing; for each month the institution of an action to divide this community property asset was delayed, the wife's potential damages were incrementally enlarged. It was the wife's duty to mitigate her damages. The wife had removed the first attorney from the case making it legally impossible for him to minimize the damages by instituting the appropriate action. Under these circumstances it was the second attorney's duty to advise the wife to institute an action for division of the retirement benefits, both in fulfillment of her duty to mitigate damages and to protect her against additional loss in the event the first attorney should be held not to have acted negligently or should prove to be judgment proof. There was no choice to be made by the second attorney between alternative remedies, and his being held responsible for damages caused by his negligence on the theory of implied indemnity is not precluded by his duty of undivided loyalty to the interests of his client. Indeed, his being held liable for his negligence on that basis would promote and encourage attorneys similarly situated to more fully protect the interests of their clients. (See *Commercial Standard Title Co.* v. *Superior Court, supra,* 92 Cal.App.3d at p. 949, dis. opn. of Cologne.)

*Gibson, Dunn & Crutcher* v. *Superior Court, supra,* 94 Cal.App.3d 347, is a case like that the court in *Held* v. *Arant* thought it had. The client guaranteed repayment of a bank loan to Virtue Bros. Mfg. Co., Ltd., (VBM), and VBM purportedly conveyed to the bank security interests in personal property. VBM subsequently defaulted; the client paid off the bank pursuant to its guarantee; and the bank assigned to the client the security interests it had received from VBM. When the client attempted to enforce the security interests, VBM filed a petition in bankruptcy, and in the bankruptcy proceedings other creditors of VBM challenged the validity of the security interests. Represented by a second law firm the client entered into a settlement with the other creditors and subsequently filed suit against the attorneys who had represented it in the loan transaction, alleging they were negligent in failing to see that enforcible security interests were created and in fail-

ing to warn that the security interests might not be enforcible. The former attorneys filed cross-complaints for partial indemnity against the second law firm alleging that its negligence contributed to the loss the client suffered. Specifically, it was alleged that the terms of the settlement between the client and the other creditors of VBM "were unreasonable and disproportionate to the risk involved" and that the second attorneys were negligent in failing promptly to petition the bankruptcy court to lift its stay on foreclosure proceedings and to seek reformation of the security instrument. (94 Cal.App.3d at p. 350.)

The court correctly acknowledged that the case before it was factually distinguishable from the *Goodman* case stating: "Goodman's action was based upon an alleged duty of an attorney to a person not his client. The cross-complaints of Bank[3] and [the first attorneys] are based upon the duty of [the second law firm] to its own client .... [They] concede that [the second law firm] owed no duty to them. They ask only that [the second law firm] contribute to any damages awarded to their client ... to the extent that it ... negligently harmed [the client]." (94 Cal.App.3d at p. 353.) Nevertheless, the court concluded that the second law firm could not be held liable, employing reasoning identical to that of the court in *Held* v. *Arant, supra,* 67 Cal.App.3d 748: "What was said in *Held* v. *Arant* is quite as applicable to indemnification under the comparative negligence standards. Since *American Motorcycle* has greatly expanded the opportunities for defendants in negligence cases to seek indemnification from parties whom the plaintiff did not choose to sue, the hazard to the attorney-client relationship could now be vastly greater than it was under the substantive law previously in effect.

"Bank and [the first attorneys] argue that permitting their cross-complaint will not impinge upon a lawyer's duty to his client because the cross-complaints do not involve any expansion of the lawyer's duty. They argue that they are doing nothing more than seeking to protect and enforce the lawyer's duty to his client. In short, if lawyer II fully performs his duty to his client, he need fear no cross-complaint for comparative indemnification.

"This argument misses the vice of the lawyer I versus lawyer II cross-complaint. The problem is not that lawyer II may be found liable to his

---

[3]The bank which was named as a defendant in the client's action for damages also sought equitable indemnity from the second law firm.

client for malpractice. It is that in satisfying the needs and desires of his client, lawyer II may be exposing himself to the not insubstantial cost of defending an action by his client's opponent.

"The parties have mooted [*sic*] the question whether in a factual setting of the kind presented here lawyer II would or would not be motivated to litigate rather than settle his client's claim in order to minimize his exposure to a cross-complaint. We think the problem is more complex than that.

"A client seeking to extricate himself from a situation caused by the negligence of lawyer I may find his options limited both by legal constraints and practical considerations. The client's perception of his own best interests, after obtaining sound legal advice, may dictate a course which lawyer I may fairly characterize as 'unreasonable and disproportionate to the risk involved.' What effect a settlement so motivated would have on the client's claim against lawyer I is not before us. What is pertinent here is the effect upon the relationship between lawyer II and the client *when the client's alternatives are under consideration. Lawyer II should not be required to face a potential conflict between the course which is in his client's best interest and the course which would minimize his exposure to the cross-complaint of lawyer I.*" (*Gibson, Dunn & Crutcher v. Superior Court, supra,* 94 Cal.App.3d at pp. 355-356; italics added.)

Thus, in *Gibson, Dunn & Crutcher v. Superior Court* as in *Held v. Arant,* the second attorneys were called upon to advise the client as to a choice between alternative remedies: whether to settle with the other creditors and sue the former attorneys for the loss or to litigate with the other creditors. The choice required the exercise of the attorneys' professional judgment; success in litigation against the other creditors was far from certain. The "undivided loyalty to client" rationale of *Held v. Arant* was therefore applicable. As already pointed out, in the case at bench, by contrast, there was no such choice to be made. The client's potential loss was increasing each month; she had the duty to mitigate her damages; and conceivably the first attorney might be found not to have been negligent or might be judgment proof. The client's interests required as a matter of law that a proceeding be commenced against the former spouse to have the pension divided.[4]

---

[4]Several other not uncommon situations come to mind in which the interests of the client might require corrective or ameliorative action as a matter of law, given the fact

*Rowell* v. *TransPacific Life Ins. Co., supra*, 94 Cal.App.3d 818, does not support the dismissal of the cross-complaint in the case at bench either. In that case the client instituted suit against his disability insurer for breach of the implied covenant of good faith and fair dealing (apparently bad faith delay in paying policy benefits). The insurer unsuccessfully sought leave to cross-complain against its insured's attorneys alleging in essence that their dilatory conduct and failure to present proper supporting documentation caused the delay of payment to the insured and thus either caused or contributed to or exacerbated the injury to the client. On appeal the court held that denial of the defendant's motion for leave to file the cross-complaint was proper because its maintenance would create the potential of conflict between the client's best interests and the course the attorneys might be required to take to minimize their own exposure inconsistent with the attorney's duty of undivided loyalty to the client. (94 Cal.App.3d at pp. 821-822.) Relying heavily on its decisions in the *Held* and *Gibson, Dunn & Crutcher* cases, the court did not disclose the analysis by which it concluded that maintenance of the cross-complaint gave rise to the potential for conflict between the attorneys' interests and those of the client.

*Commercial Standard Title Co.* v. *Superior Court, supra*, 92 Cal. App.3d 934, a split decision of the First Division of this court is much like the *Rowell* case and is similarly distinguishable. In *Commercial Standard* the plaintiff filed suit against two title insurance companies for negligently or fraudulently issuing a defective lot book guarantee upon which the plaintiff had relied in entering into a transaction involving the exchange of real property. The defendant title insurance companies filed a cross-complaint against the plaintiff's attorney asserting that the attorney's negligence in advising the plaintiff to rely upon the lot book guarantee, which purported to limit liability of the insurers to $100, caused or contributed to the plaintiff's injury. A majority of the court upheld the trial court's dismissal of the cross-complaint, apparently on at least three separate bases. First, it was apparently concluded that the defendant title companies and the cross-defendant attorney were not really joint tortfeasors within the contemplation of .

that the first attorney has been discharged and has no authority to take such action, i.e.: filing of an application for leave to file a late claim when the negligence of the first attorney was the failure to file a timely claim against a governmental agency; filing of a motion for relief from default, if such a motion is cognizable, when the negligence of the first attorney was some omission resulting in a default against the client.

the *American Motorcycle* decision because the attorney could not be held responsible for the entire loss. (92 Cal.App.3d at pp. 941-943.) Secondly, it was reasoned that the defendant title companies and the cross-defendant attorney were not joint tortfeasors within the purview of the *American Motorcycle* decision because their alleged wrongs were independent and did not arise from violation of a common duty. (92 Cal.App.3d at pp. 943-944.) Finally, reliance was placed on the "undivided loyalty to client" rationale of *Held* v. *Arant, supra*, 67 Cal.App. 3d at page 752, and *Goodman* v. *Kennedy, supra*, 18 Cal.3d at page 344. (92 Cal.App.3d at pp. 945-946.)

In respect to the latter basis, however, although the majority did say that "[t]he lawyer's duty in re full and frank discussion and disclosure could not help but be affected by this overhanging threat of a lawsuit brought by a person about whom the lawyer is advising his client," it gave to the asserted interference with the attorney-client relationship a new twist. It said: "If suit were to be permitted against the current acting attorney for plaintiff, such rule would effectively allow a defendant to require plaintiff's now-sued attorney for multiple reasons to recuse himself. . . . There is inherent in proposed extension of the [*American Motorcycle*] rule the seeds of irresponsible cross-lawsuits motivated by naught but spite and a desire to spread confusion, dissention [*sic*] in the opponent's camp." (92 Cal.App.3d at p. 945.)

As in *Rowell*, the majority in the *Commercial Standard* case did not disclose the analysis by which they concluded that allowing the cross-complaint in that case would affect the "lawyer's duty in re full and frank discussion and disclosure." The dissent of Acting Presiding Justice Cologne, even if unpersuasive in the *Commercial Standard* case itself, correctly evaluated *Held* v. *Arant, supra*, 67 Cal.App.3d 748, and indicated the proper analytical approach in this kind of case. It stated: "The court [in *Held* v. *Arant, supra*] reasoned that allowing such an indemnity action to be filed would be detrimental to the attorney-client relationship. When an attorney knows he may have to indemnify an adversary if he pursues one course for his client and that he will not have to indemnify anyone if he pursues a different course, his own self-interest interferes with his objectivity in making decisions for his client. To avoid this possibility, the court would not allow the indemnity action to be brought in that particular situation.

"The present case, however, presents no considerations of interference with the attorney-client relationship. Assuming there is proof of the al-

legations, [the attorney's] judgment in relying upon the lot book guarantee and the representations of the other parties to the exchange contract was not detrimentally affected by the potential of having to indemnify the petitioners. If anything, such a threat would encourage [the attorney] to use even greater care in protecting his client. Thus the policy considerations of *Held* are lacking here." (92 Cal.App.3d at p. 949.)

The observation by the majority in *Commercial Standard* that the filing of a cross-complaint against the plaintiff's attorney would result in the attorney's having to discontinue representing the plaintiff in the action, even if true, cannot be a controlling consideration. The right of a party to be represented by the attorney of choice and the ability of the attorney to continue representing the client are, of course, very important, but they are required to give way in various circumstances and may not be urged as a complete shield to the attorney's being responsible for the consequences of his negligent conduct. (See *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d at p. 352; see also Civ. Code, § 1714.) The dire suggestion that completely meritless cross-complaints might irresponsibly be filed against the plaintiff's attorney "motivated by naught but spite and a desire to spread confusion, dissention [*sic*] in the opponent's camp" (*Commercial Standard Title Co.* v. *Superior Court, supra*, 92 Cal.App.3d at p. 945) is unpersuasive. Ample deterrence is provided by the prospect of liability for actual and punitive damages in a suit for malicious prosecution. And if there is substance to the charges of malpractice by the second attorney, whatever cause there might be for him to withdraw on account of the filing of the cross-complaint would eventually come to light in trial of the case even without the cross-complaint.

The case at bench is a perfect illustration. Had the problem of cross-defendant's alleged negligence not come to light as a result of the cross-complaint, it probably would have in discovery with respect to cross-complainant's defenses to the main action and certainly would have during trial. Two of cross-complainant's prime defenses at trial must of necessity be that plaintiff failed to mitigate her damages by failing to file an action for division of the retirement benefits and that a substantial part of the damages claimed were not proximately caused by cross-complainant's negligence but the negligence of cross-defendant in not advising the institution of such a suit. We are not entirely convinced that in all cases the filing of a cross-complaint against the plaintiff's attorney will necessitate that he discontinue representing the plaintiff in

the action, but if there is a problem in that regard it is preferable that the problem be brought to light during the pleading stages of the case rather than in the midst of trial. Again, the instant case demonstrates that that is in the client's best interests. We are informed that in the case at bench, the client has employed new counsel who have instituted suit for division of the retirement benefits and amended her pleadings to include cross-defendant as one of those whose alleged negligence has contributed to her loss.

We have no quarrel with disallowing a cross-complaint against the plaintiff's attorney when the negligence alleged is the unreasonable choice of alternative remedies of uncertain efficacy and requiring the exercise of professional judgment. ▮ In the case at bench, however, the institution of a suit against plaintiff's former spouse for division of the retirement benefits was necessary as a matter of law to serve the client's best interests whether or not suit was also filed against her former attorney for negligence in failing to have the retirement benefits disposed of in the dissolution proceeding. No exercise of judgment in choosing between alternative remedies was involved, and the possibility of a cross-complaint for proportional indemnity in the case at bench could not have affected the exercise of any such judgment.

The judgment of dismissal is reversed.

McDaniel, J., concurred.

**MORRIS, J.**—I respectfully dissent.

Recent cases have uniformly held that an attorney who is sued by a former client for malpractice may not cross-complain against the client's successor attorney who is retained to extricate the client from the situation created by the first attorney.

There are sound policy reasons supporting the rule that the first attorney has no right of indemnity from the second. Among them are: (1) the threat of such a lawsuit by a client's adversary impinges upon the individual loyalty of the second attorney in advising his client (*Held* v. *Arant* (1977) 67 Cal.App.3d 748, 752 [134 Cal.Rptr. 422]); (2) one consequence of such a cross-complaint is to preclude the second attorney from trying the lawsuit, thus depriving the party of the attorney of his choice (*Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.

App.3d 347, 352 [156 Cal.Rptr. 326]); (3) the threat of such a cross-complaint results in the injection of undesirable self-protective reservations into the attorney's counselling role, thereby diminishing the quality of legal services received by the client (see *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737]); and (4) such lawsuits jeopardize the policy of encouraging confidence and preserving inviolate the attorney-client relationship (*Commercial Standard Title Co. v. Superior Court* (1979) 92 Cal.App.3d 934, 944-995 [155 Cal.Rptr. 393]).

The majority opinion casually dismisses these policy considerations as having no applicability to the circumstances of this case because they are factually distinguishable from the cases enunciating the rule. Certainly such factual differences exist, just as the cases cited are factually distinguishable one from another. However, the differences do not affect the policy considerations articulated in the cases. The threat to the attorney-client relationship posed by the filing of cross-complaints against plaintiffs' counsel can be avoided only if the rule is applied to preclude the filing of all such cross-complaints.

The selective allowance or disallowance of cross-complaints based upon whether "the negligence alleged is the unreasonable choice of alternative remedies of uncertain efficacy and requiring the exercise of professional judgment" will result in emasculation of the rule. As long as a cross-complaint may be allowed if the court determines that the negligence alleged constitutes negligence as a matter of law, the danger to the attorney-client relationship envisioned by the courts in *Goodman, Held, Gibson, Dunn & Crutcher* and *Commercial Standard* remains.

In my opinion the policy reasons underlying the rule stated in the above cases are applicable in this case.

Although my disagreement with the majority is based upon the public policy heretofore stated, I also note that the "general rule" allowing proportionate indemnity, relied on by the majority, was developed in a different factual context than that involved in this case.

As the court noted in *Held* v. *Arant, supra*, "Distinctions between the situation in *Herrero* and *Niles*" as well as peculiarities of the attorney-client relationship dictate that the *Herrero-Niles* rule not be extended to the situation involved in *Held* v. *Arant*. (*Held* v. *Arant, supra*, 67

Cal.App.3d 748, 752.) The *Held* court then pointed out in footnote 3 on page 752 that "In the *Herrero-Niles* situation, the original tortfeasor's liability for further personal injury caused by subsequent negligent medical treatment is governed by Restatement Second of Torts, section 457. The situation at bench falls within the more restrictive terms of section 447. We express no opinion on the conclusion dictated by section 447 on the facts here present."

The distinctions between the situation presented in the case at bench and the *Herrero-Niles* situation are even greater, and the policy reasons favoring the extension of the rule of proportionate indemnity correspondingly weaker. As the court noted in *Held* v. *Arant*, both *Herrero* and *Niles* involved factual situations falling within section 457 of the Restatement. Section 457 refers to *additional harm* resulting from efforts of a second tortfeasor to mitigate harm caused by negligence of the first. In *Herrero* and *Niles* the negligence of physicians and hospitals in providing treatment for injuries inflicted by the negligence of the first tortfeasor was alleged to have caused additional harm. In *Held* v. *Arant* the court noted that its own situation was covered by section 447 of the Restatement, which applies where the initial actor's conduct is negligent *because* there is a realizable likelihood that a third person will act in the negligent manner in which a particular person acts. The first attorney in *Arant* alleged that the second attorney was negligent in settling defensible claims which were asserted against the client because of the first attorney's alleged negligence.

In the present matter the negligence alleged against the first attorney is covered by section 439 of the Restatement, i.e., where the original tortfeasor's negligent conduct actively and continuously operates to bring about harm to another even though a third person's negligence may operate simultaneously. Here the alleged conduct of the first attorney was negligent at the time of performance and was still actively and continuously operating at the time the second attorney entered the case. The damage to the client from that initial conduct was not dependent upon the actions of the second attorney (the § 447 situation) nor was it exacerbated by the second attorney (the § 457 situation).

Assuming, as the majority does, that Attorney Morton negligently failed to file an action against the client's former spouse, that negligence did not increase the harm naturally flowing from the initial negligence of Attorney Parker. Morton's alleged negligence was simply

in failing to extricate the client from the continuing effect of Parker's negligence.

Since the second attorney owed no duty to attorney number one, no public policy reason compels granting attorney number one a right of indemnity against attorney number two in this factual situation.

I would affirm the judgment of the trial court dismissing the cross-complaint.