[Civ. No. 63871. Second Dist., Div. Two. June 23, 1982.]

STEVEN J. GOLDFISHER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
SHAPIRO, LAUFER, POSELL & CLOSE et al., Real Parties in
Interest.

COUNSEL

Steven J. Goldfisher, in pro. per., for Petitioner.

No appearance for Respondent.

Mitchell S. Shapiro, in pro. per., Shapiro, Laufer, Posell & Close and Beverly S. Tillett for Real Parties in Interest.

OPINION

ROTH, P. J.—Predicated upon the facts outlined below, petitioner (Lawyer II) asks this court to mandate respondent court to vacate its order overruling his general demurrer to the cross-complaint of real party in interest Lawyer I filed against him and to enter an order sustaining the demurrer of Lawyer II without leave to amend and to enter a judgment against Lawyer I.

During a lawsuit herein referred to as the primary action wherein Lawyer I was among other things defending an order to show cause seeking a preliminary injunction against the clients of Lawyer I, said clients believing Lawyer I had negligently created the situation which had engendered the lawsuit and that it was not being properly managed, substituted Lawyer II.

Within approximately a month thereafter Lawyer I, through an assignee, sued the clients for fees. Clients employed Lawyer II to represent them in the fee action. Lawyer II answered and filed a cross-complaint on their behalf against Lawyer I. Lawyer I then appeared in the fee action, answered and cross-complained against Lawyer II alleging Lawyer II could have successfully defended the request for a preliminary injunction in the primary action, had he been properly prepared. And, further alleging that by reason of lack of defense to the issuance of the preliminary injunction and in other respects as to the management of the primary action the damages which clients suffered which they claim were caused by Lawyer I were generated by the professional negligence of Lawyer II in his management of the primary action and in any event were exacerbated. Lawyer I seeks equitable indemnification from Lawyer II.

The initial case speaking directly on a factual situation such as at bench is *Held* v. *Arant* (1979) 67 Cal.App.3d 748 [134 Cal.Rptr. 422] (hg. den.). It was followed by: *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393] (hg. den.); *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326] (hg. den.); *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679] (hg. den.); *Parker* v. *Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197]; *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931 [175 Cal.Rptr. 81] (hg. den.).

In *Held*, Arant, a patent attorney (Lawyer I) negotiated an agreement to settle a pending lawsuit for Held with Nova-Tech. Held was thereafter sued by Nova-Tech predicated on misrepresentations which induced the agreement. Held represented by successor counsel Lawyer II sued Lawyer I alleging professional negligence. Arant answered denying negligence and cross-complained against Lawyer II alleging Lawyer II had in the action brought by Nova-Tech against *Held* settled legally defensible claims "... in a manner that forseeably damaged Arant by exposing him to malpractice and injuring his professional reputation." The cross-complaint [sought] indemnity from [successor] if Arant [was] found liable to Held.

The *Held* court said: "Because reasons of policy peculiar to the tripartite relationship of attorney-client-adversary override the principle of equitable indemnity enunciated in cases such a *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69 [38 Cal.Rptr. 490, 8 A.L.R.3d 629] and *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230 [116 Cal.Rptr. 733], we conclude that the first lawyer has no right of indemnity from the second. Accordingly, we affirm a judgment dismissing an amended cross-complaint on general demurrer." (67 Cal.App.3d at p. 750.)

The court then stated: "Despite the lack of a requirement of privity, an attorney's liability for negligence, ... is limited by the concept of duty ... Here the cross-complaint shows on its face that [Lawyer I] was not an intended beneficiary of [his former client's representation by Lawyer II]." (*Id.*, at p. 751.)

The *Held* court continued: "In the context of the ʿcase at bench, MM&H [Lawyer II] owed an undivided loyalty to Held to use its best judgment to extricate him from the situation created by Arant's [Lawyer I] advice. Extrication involved consideration both of resistance of the claim of Nova-Tech and of the assertion of an affirmative claim

against Arant. [Lawyer II's] ability to choose between courses of conduct best designed to protect the interests of its client cannot be inhibited by the proposition that if it chooses the course of resistance of the claim it will be immune from liability to the one adversary absent malicious prosecution (*Daly* v. *Smith* (1963) 220 Cal.App.2d 592, 604 . . .), while if it chooses the course of prosecuting the client's claim for malpractice against a prior attorney it may be subject to a claim to indemnify that attorney.

"We thus conclude that the nature of the relationship of attorney and client requires that the attorney retained to represent the client in a cause in which actual or potential adversaries include both a private person and a prior attorney not be subjected to the potentiality of being required to indemnify the prior lawyer in the event that the subsequent counsel advises settlement with the private party and the prosecution of a malpractice action against the first lawyer." (Pp. 752-753.)

In *Commercial Standard* (Cologne, J., dis.) the majority discussing and refuting any legal effect of the application of *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] (*AMA*), (not raised or treated in *Held*) would have on the tripartite relationship defined in *Held* said at 92 Cal.App.3d pages 944-945: "But to return to solid legal firmament, reasons of public policy peculiar to the [tripartite situation] make the application of equitable principles enunciated in *American Motorcycle* untenable. The lawyer has the duty of undivided loyalty. . . . He should not be forced to choose between conflicting interests. . . . There is inherent in the proposed extension of the *AMA* rule, the seeds of irresponsible cross-lawsuits . . . ."

In *Gibson*, lawyer I had originally advised his client with respect to a transaction which required client to guarantee a note payable to a bank collateralized with certain security interests of the client's wholly owned subsidiary. The subsidiary defaulted. A chapter XI proceeding followed. The client on demand of bank paid the note. The bank concurrently assigned the security interests it had received as collateral to client who then retained lawyer II, to extricate it from the loss suffered. Gibson among other things, filed an action on behalf of client against bank and lawyer I alleging ". . . Bank and [lawyer I] acting on behalf of [client] . . . were negligent . . . failing to advise [client] of the risk that the security interests would not be enforceable."

Bank and lawyer I severally filed cross-complaints alleging that lawyer II was negligent in their representation in the chapter XI proceedings and that such negligence contributed to the loss client seeks to recover from them.

*Gibson* adopts and fortifies the *Held* announcement of public policy. It treats and discusses the effects of *AMA* and faces it squarely. After pointing out two distinctions (a) *AMA* deals with a single indivisible injury whereas the facts at bench involve two successive acts and (b) deprivation of a party of a lawyer of his choice who is also the lawyer most familiar with the background of his case and its critical relationship with lawyer II with respect to the resolution of the situation of lawyer I, the *Gibson* court said:

"The most conspicuous consequence of a cross-complaint against the plaintiff's lawyer is to preclude that lawyer from trying the case on behalf of the plaintiff. Depriving a party of the lawyer of his choice, who is also the lawyer most familiar with the background of the case, is a serious matter, but we do not view it as controlling here. In *Comden v. Superior Court* (1978) 20 Cal.3d 906 ..., the Supreme Court imposed a standard which severely impairs the availability of attorneys to litigate cases arising out of business matters in which they or their firms participated. The impact of *Comden* is to give secondary importance to the need of a party to be represented by the law firm he deems best qualified for that task.

"The critical element is the effect upon the relationship between the injured party and lawyer II while they are trying to resolve the situation created by lawyer I." (P. 352.)

". . . . . . . . . . . . . .

"A client seeking to extricate himself from a situation caused by the negligence of lawyer I may find his options limited both by legal constraints and practical considerations. The client's perception of his own best interests, after obtaining sound legal advice, may dictate a course which lawyer I may fairly characterize as 'unreasonable and disproportionate to the risk involved.' What effect a settlement so motivated would have on the client's claim against lawyer I is not before us. What is pertinent here is the effect upon the relationship between lawyer II and the client when the client's alternatives are under consideration. Lawyer II should not be required to face a potential conflict between

the course which is in his client's best interest and the course which would minimize his exposure to the cross-complaint of lawyer I.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"Counsel ... have argued that a suit for malpractice is one of the risks of professional life and should not be regarded as a serious inhibition upon professional loyalty and objectivity. With respect to malpractice claims of dissatisifed clients, that philosophy may be appropriate. But the effect is different if the attorney is exposed to negligence claims by parties who are his client's adversaries. The teaching of such cases as *Goodman* v. *Kennedy, supra*, 18 Cal.3d 335 [134 Cal.Rptr. 375, 556 P.2d 737] ... is that exposure to the client's potential adversaries '"would prevent him from devoting his entire energies to his client's interests."' (18 Cal.3d at p. 344.)" (*Gibson*, 94 Cal.App.3d at p. 356.)

Thompson, J., who authored *Held* had the opportunity to address the effect of *AMA* on the doctrine enunciated by *Held*. In *Rowell* the court said at 94 Cal.App.3d page 821: "The second theory is beyond the ambit of *American Motorcycle*. That decision addresses issues involving concurrent tortfeasors (20 Cal.3d at p. 587). Appellants' second theory seeks to impose liability for indemnity upon a subsequent tortfeasor. This court has previously determined in *Held* v. *Arant, supra*, 67 Cal. App.3d 748, and in *Gibson, Dunn & Crutcher* v. *Superior Court, supra, ante*, p. 347, that the normal rules of indemnity from a subsequent exacerbating tortfeasor do not apply where the alleged subsequent tort is connected with lawyer representation of the plaintiff in his action against the one seeking indemnity. The theory underlying *Held* and *Gibson, Dunn* is that reasons of policy preclude a lawyer's liability by way of cross-complaint for indemnity for damage to his own client in the course of action against the cross-complaining adversary. The potential of conflict between the client's best interest and the course which the lawyer must take to minimize his own exposure to a cross-complaint from the adversary is untenable in view of the lawyer's duty of undivided loyalty to his client. (See 67 Cal.App.3d at p. 752.)

"Appellants' first theory of liability of cross-defendants fails for the same policy reasons. To the extent that the cross-complainants may be successful in proving at trial that action of the persons it seeks to name as cross-defendants contributed to the original injury, cross-complainants' liability to plaintiff will be reduced by the principles of

comparative fault. The proposed cross-complaint shows on its face that the fault with which appellants seek to charge cross-defendants was committed, if at all, in the course of their employment as agents for the plaintiff. To allow defendants the additional advantage of being permitted to seek indemnity from plaintiff's counsel for the same conduct would be to countenance the same potential of conflict with the lawyer's undivided loyalty to his client that is precluded in *Held* and in *Gibson, Dunn.*"

Each of the three cases (supplemented by *Rowell*) discussed facts and legal posture which were substantially similar.

*Rowell* was followed by *Parker v. Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197]. The majority in *Parker* recognize the rule of immunity announced by the preceding four cases but it distinguished the facts in that in *Parker*, lawyer II's alleged negligence was his omission to prosecute a claim for a division of the military pension of client's former husband which, for some reason not clear, lawyer I was not responsible.

Morris, J., in dissent directed attention to the fact that the majority had overlooked the policy considerations upon which the *Held* rule was grounded: "The majority opinion casually dismisses these policy considerations as having no applicability to the circumstances of this case because they are factually distinguishable from the cases enunciating the rule. Certainly such factual differences exist, just as the cases cited are factually distinguishable one from another. However, the differences do not affect the policy considerations articulated in the cases. The threat to the attorney-client relationship posed by the filing of cross-complaints against plaintiffs' counsel can be avoided only if the rule is applied to preclude the filing of all such cross-complaints." (*Parker*, 117 Cal.App.3d p. 768.)

In *Pollack*, a lawyer was retained by Daniels to file an action for and to settle or try a claim for serious personal injuries resulting from the medical malpractice of defendants Kaiser Foundation and Dr. David Eder. Pollack agreed to advance all necessary expenses. In return for his services and such expenses, Daniels agreed to pay to Pollack 50 percent of any damage recovery. Approximately two years thereafter but seven months before trial Pollack, with the consent of Daniels, was persuaded by representations made by Lytle, a lawyer, to associate Lytle to complete all trial preparation and to assume the laboring oar for the tri-

al and/or settlement of the Daniels lawsuit. Each were to share in the contingent compensation. During those seven months, Lytle made other crucial representations to Pollack as to what he had done and what he was doing with respect to trial preparation. Before the trial date, an offer of $250,000 in settlement was made and rejected. The offer was renewed, Pollack advised acceptance. Lytle then persuaded Daniels to discharge Pollack. Daniels' case was thereafter tried and lost. Pollack then persuaded Daniels to sue Lytle for professional malpractice.

That lawsuit, if it was filed, was not before the *Pollack* court. Pollack in his action against Lytle alleged he was fraudulently induced to enter into the contract to share services and fees with Lytle and during the course of the working arrangement between the two, Lytle made crucial misrepresentations as to work which he had done and which he expected to do as a consequence of which Pollack suffered damages. The trial court sustained a demurrer without leave to amend and a judgment was entered thereon. The *Pollack* court held that the action between the two lawyers was based on an independent contract and was not embraced in the tripartite situation discussed by *Held* and vacated the judgment of dismissal.

The dissenters in *Commercial* and *Gibson* question the solidity of the position of the majority that there is a question of public policy which applies. They assert that lawyer II's integrity and complete devotion to a client would be neither impaired nor jeopardized, and to assume that they would is a misunderstanding by the majority of the teaching of *Norton* and *Goodman*.[1] *Held,* it is argued, was decided as was *Norton* and *Goodman* prior to the Supreme Court's decision in *AMA*. It is, therefore, unknown and premature to assume the general rules of liability generated by the doctrine of foreseeability and/or of partial

---

[1](*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 344 [134 Cal.Rptr. 375, 556 P.2d 737].) *Goodman* makes clear that the rule it enunciates seeks to preclude liability of an attorney to a third party who engages in a transaction with the attorney-client and "with whom the client deals *at arm's length*" in such transaction.

Referring to *Norton* v. *Hines*, the *Gibson* court said in footnote 2 at 94 Cal.App.3d page 358:

"'A party who had successfully defended a civil suit filed a complaint against his opponent's attorney claiming damages for the attorney's negligence in advising prosecution of the suit but failing to allege the elements of an action for malicious prosecution. . . holding that no cause of action was stated the court properly expressed concern that if an attorney is made liable to his client's adversary for mere negligence in advising commencement of a suit, "lawsuits now justifiably commenced will be refused by attorneys, and the client in most cases, will be denied his day in court." . ' (*Goodman, supra*, 18 Cal.3d 335, 344-345.)"

indemnity based on comparative fault principles, set forth in *AMA*, are not applicable to the tripartite relationship defined by *Held*.

The majority in *Parker* by Kaufman, P. J., although *Held* is distinguished on the facts, assert at the outset their disagreement with the public policy ground announced by *Held*. Their position is that the rights and liabilities of joint-tortfeasors as between themselves have been thoroughly settled, and *Held* and its progeny are a departure therefrom. Such departure is against public policy.

■  "It is the general rule that a subsequent tortfeasor who by his negligence exacerbates the damages suffered by an already injured party may be named as a cross-defendant by the party whose negligence caused the original injury and who, therefore, may be held liable to the injured party for all of his damages including those resulting from the subsequent negligence. (*Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 75 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; see *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d at p. 354; see also *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-598 [146 Cal.Rptr. 182, 578 P.2d 899].) This rule derives from several well-recognized legal principles all of which foster the public policy of encouraging persons to conduct themselves with reasonable care: that every person should be responsible for the consequences of his negligent conduct (Civ. Code, § 1714; see generally, *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 816-817 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d]); that as between tortfeasors who contribute to a loss each shall bear the loss in proportion to his fault (see *American Motorcycle Assn.* v. *Superior Court, supra*, 20 Cal.3d 578; *Gibson, Dunn & Crutcher* v. *Superior Court, supra*, 94 Cal.App.3d 347; *Herrero* v. *Atkinson, supra*, 227 Cal.App.2d at p. 75; *Niles* v. *City of San Rafael* (1974) 42 Cal.App.3d 230, 238-239 [116 Cal.Rptr. 733]); and that an injured person must himself take reasonable action to mitigate his damages (*Pretzer* v. *California Transit Co.* (1930) 211 Cal. 202, 208-209 [294 P. 382]; see Rest.2d Torts, § 918; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 870, p. 3158). Manifestly, the general rule allowing proportionate indemnity, subserving as it does this fundamental public policy, should not be departed from in the absence of compelling reasons. There are no real reasons for departing from the general rule in this case." (*Parker*, 117 Cal.App.3d at p. 756.)

■  It is clear from the cases cited above that there is no privity between Lawyer I and II. It is also clear that Lawyer II when succeeding

to the unfinished work of Lawyer I could reasonably foresee that if the client claimed malfeasance on the part of Lawyer I that Lawyer I would seek indemnity against Lawyer II if the malfeasance of the latter could be proved. The question is whether the general rules with respect to subsequent tortfeasors as authoritatively stated in *Parker* should be extended to the tripartite relationship.

We think that *Goodman* and *Norton* do suggest limitations on extension of the rule of foreseeability. We note too that Mosk, J., dissenting in *Goodman* and joined by Tobriner, J. speaking of foreseeability as a basis for liability, said at 18 C.3d page 353 in pertinent part: "No doubt gross extensions of liability, although involving similar conduct and results, can be conjured up. . . . However recovery under such fanciful circumstances could be denied for remoteness. Furthermore, the liability of the attorney to third parties should be limited to cases in which, like the matter before us and the *Biakanja* circumstances, the only recourse of the injured party is to pursue the negligent attorney."

The limitation announced in *Held* may or may not be embraced in the above quote. However, the field of torts grows daily more fertile.

A multiplicity of actions germinating and emphasizing rights and principles heretofore unexploited are being continuously filed. The field of litigation, always sensitive, complex and explosive, grows geometrically. To encourage claims of indemnification where two lawyers successively represented the same client is not for the benefit of the client. Differences between lawyer and client respecting malpractice should be limited to themselves. The facts which generally germinate the relief sought at bench are pregnant with the seed of exacerbated conflict. The inevitable consequence is a corrosion of the sacred attributes of complete confidentiality and undivided loyalty which are the heart of the relationship between lawyer and client. It is our considered judgment the potential damage involved is grave and inevitable.[2] On balance any loss of an asserted right is of small consequence when measured against the public interest.

---

[2]It is suggested in *Parker*, 117 Cal.App.3d at page 759 footnote 2, that the immunity extended to lawyers by *Held* should be extended to doctors as the relationships are analogous. There are vital distinctions. Unlike other professionals a lawyer has the absolute duty (1) to inform a client of the existence of a cause of action against any predecessor (2) to vigorously pursue such action and (3) to manage it with complete disregard to any personal embarrassment, benefit or interest. Thus *Held* reasons: "In the situation of successive acts of negligence by a tortfeasor and treating physician, the possibility that he may be sued by the original tortfeasor for indemnity in no way inhibits the performance of the professional duty by the physician. Whatever may be the

We have not found nor has there been called to our attention any decision of the Supreme Court directly on this subject. Court of Appeal decisions hereinabove discussed on balance hold and we agree, that public policy should and does prohibit the initiation of the type of action here involved.

We therefore grant the petition and hereby direct respondent court to vacate its order overruling the demurrer of Lawyer II and to enter a new and different order sustaining the demurrer without leave to amend; and to enter judgment thereon dismissing the cross-complaint of Lawyer I.

Compton, J., and Beach, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied August 18, 1982.

---

effect of exposure to malpractice suits upon the performance of good medicine, it exists *irrespective of the indemnity potential. Where, however, an attorney is retained to re*present the interests of his client against persons who are actual or potential adversaries, the possibility that one of those adversaries may seek indemnity from the attorney if he is held liable to the client can impinge upon the undivided loyalty owed by counsel." (67 Cal.App.3d at p. 752.)