[No. G014315. Fourth Dist., Div. Three. May 30, 1996.]

LLOYD G. COPENBARGER et al., Plaintiffs and Appellants, v. INTERNATIONAL INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Copenbarger & Associates, Paul D. Copenbarger, Richard Oberruter and Nikki A. Presley for Plaintiffs and Appellants.

Haight, Brown & Bonesteel, Roy G. Weatherup, John W. Sheller, Jon M. Kasimov and Jeffrey C. Bogert for Defendants and Respondents.

**OPINION**

**RYLAARSDAM, J.**—Lawyers, sued for malpractice, filed an action for indemnity against the lawyers who subsequently represented their dissatisfied client. The action for indemnity was dismissed. In a subsequent action for the malicious institution of the indemnity action, the court determined there was probable cause for instituting and maintaining the action and entered judgment for defendants. Appellants, plaintiffs in the action for

malicious institution, contend this determination was error since an action for indemnity against successor lawyers is clearly prohibited. We affirm.

## FACTS

This case represents a daisy chain of litigation which started with Mrs. Nelson's divorce some 15 years ago. The firm of Hewitt and Marshall (H&M) initially agreed to represent her. Alas, the relationship between H&M and Mrs. Nelson soon took the same course as the relationship between Mr. and Mrs. Nelson, causing H&M to substitute out as her attorneys. Shortly thereafter H&M sued Mrs. Nelson to recover legal fees. Mrs. Nelson countered by filing a cross-complaint charging H&M with legal malpractice in the handling of her divorce action. The cross-complaint was defended by the firm of Luce, Forward, Hamilton & Scripps (LFH&S) under a legal malpractice policy issued by International Insurance Company, whose claims were being adjusted by Crum & Forster Managers Corporation (collectively insurer). This malpractice suit was eventually settled.

After H&M ceased to represent her in the divorce action, Mrs. Nelson substituted Richard J. Annis, one of appellants herein, as her attorney of record. She also retained Copenbarger & Copenbarger (C&C), another appellant, to defend the H&M action for fees and to prosecute the malpractice action against H&M. The parties dispute whether Annis and C&C represented Mrs. Nelson in the divorce action, before H&M substituted out. Eventually Annis, and allegedly C&C, assisted Mrs. Nelson in entering into a settlement in the Nelson divorce action.

H&M moved for leave to file a cross-complaint against Annis and C&C (for indemnity and contribution) contending their negligence contributed to Mrs. Nelson's losses. The trial court denied this motion. Not to be deterred, H&M filed a new lawsuit against Annis, C&C and Mrs. Nelson, asserting the same claims for indemnity and contribution. This action was dismissed as to Nelson and summary judgment was granted in favor of Annis. Later H&M dismissed the entire indemnity action.

Now came Annis and C&C's turn. Together with Mrs. Nelson, they filed an action for the malicious institution of the indemnity action against H&M, LFH&S, and insurer. The liability of insurer was alleged to be predicated on a conspiracy with the other defendants in the malpractice action to commence and maintain the underlying suit. H&M was dismissed from this action and LFH&S eventually settled, leaving the action to proceed against insurer.

As a defense to the action for the malicious institution of the indemnity action, insurer contended there had been probable cause for the institution

and maintenance of the suit. At the commencement of trial, the parties stipulated that issue was to be determined by the trial court before a jury was to be selected. Pursuant to the stipulation, the trial court reviewed documents, including declarations and extracts from depositions, as well as some stipulated facts, and ruled that there had been probable cause as a matter of law. This resulted in a judgment of nonsuit against Nelson, Annis and C&C, from which they now appeal.

## DISCUSSION

■ Lack of probable cause is an essential element of a cause of action for the malicious institution of a civil proceeding.[1] (*Klein* v. *Oakland Raiders, Ltd.* (1989) 211 Cal.App.3d 67, 73 [259 Cal.Rptr. 149].) Presence or lack of such probable cause is to be determined as a matter of law and by an objective standard. (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 875 [254 Cal.Rptr. 336, 765 P.2d 498].) The test to be used by the court is whether "any reasonable attorney would have thought the claim tenable." (*Id.* at p. 886.)

The trial court determined there was probable cause for the institution of the indemnity action, based on a number of findings. All of these were well supported by the evidence and the law. Most significantly the court found, "The law of indemnity in connection with claims against successor legal counsel was far from clear at the time the underlying action for indemnity was filed."

The issue of whether a lawyer sued for malpractice may seek indemnity from a lawyer who subsequently represented the plaintiff-client vexed the courts for some time. Where it was contended the conduct of the successor lawyer contributed to plaintiff's loss, general rules of indemnity and contribution (see, e.g., *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 75 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]) argue in favor of permitting cross-complaints or actions for contribution or indemnity by the original lawyer, now being sued. At least since *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], our courts have enunciated the principle that ". . . liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor 'in direct proportion to [his] respective fault.'" (*Id.* at p. 598.) *American Motorcycle* provided the procedural mechanism to permit one tortfeasor to obtain

---

[1]We identify the tort as "malicious institution of a civil proceeding," rather than "malicious prosecution," the phrase used by the parties, for the reasons stated at 5 Witkin, Summary of California Law (9th ed. 1988) Torts, section 431, page 513.

contribution from another who contributed to the damage by permitting a tort defendant either to file a cross complaint or a separate action for indemnity or contribution against another who allegedly contributed to the damage for which the defendant may be liable.

In the case of a lawyer sued for malpractice, however, there are policies which militate against permitting the assertion of indemnity and contribution claims against the successor lawyer. Since the successor lawyer frequently is the very lawyer representing plaintiff in the malpractice action, permitting such a claim to proceed would create conflicts for that lawyer in the malpractice action. The mere ability to pursue such a claim would thus give the lawyer being sued for malpractice a tactical weapon not available to defendants in other tort actions. Other policies militating against permitting such a cross-complaint or suit for indemnity or contribution to proceed arise from the difficult problems posed by the lawyer's duty to protect the confidences of the client and arising out of the policies protecting the lawyer's work product. These conflicting policies resulted in a number of conflicting appellate decisions.

The action for indemnity was filed in July 1987. On May 6, 1988, defendants dismissed their suit against Nelson, and on June 6, 1989, defendants dismissed the entire indemnity action. We therefore examine the status of the law on the issue at that time to determine whether "any reasonable attorney would have thought the claim tenable" from the time the complaint for indemnity was filed to the date of its dismissal in 1989. (*Sheldon Appel Co.* v. *Albert & Oliker, supra*, 47 Cal.3d at p. 886.)

Seven published Court of Appeal decisions, all decided within a three-year period, dealt with the issue before 1987. (*Goldfisher* v. *Superior Court* (1982) 133 Cal.App.3d 12 [183 Cal.Rptr. 609]; *Pollack* v. *Lytle* (1981) 120 Cal.App.3d 931 [175 Cal.Rptr. 81]; *Parker* v. *Morton* (1981) 117 Cal.App.3d 751 [173 Cal.Rptr. 197]; *Rowell* v. *TransPacific Life Ins. Co.* (1979) 94 Cal.App.3d 818 [156 Cal.Rptr. 679]; *Gibson, Dunn & Crutcher* v. *Superior Court* (1979) 94 Cal.App.3d 347 [156 Cal.Rptr. 326]; *Commercial Standard Title Co.* v. *Superior Court* (1979) 92 Cal.App.3d 934 [155 Cal.Rptr. 393]; *Held* v. *Arant* (1977) 67 Cal.App.3d 748 [134 Cal.Rptr. 422].) In each of these cases, Supreme Court review was sought and denied. We note that, although they provide analytical guidance, the factual contexts of the last two cited cases differ from the pure issue with which we are here concerned.

One of these cases, *Parker* v. *Morton, supra*, decided by the Fourth District (opn. by Kaufman, J.), held causes of action for indemnity and

contribution could be asserted by the defendant lawyer against the successor lawyer. Justice Morris dissented on the basis of the policy reasons discussed above. Although the remaining cases held to the contrary, the decisions were less than unanimous. Justice Johnson dissented in *Pollack* v. *Lytle, supra,* 120 Cal.App.3d at page 945, while Justice Jefferson dissented in *Gibson, Dunn & Crutcher* v. *Superior Court, supra,* 94 Cal.App.3d at page 357. In *Commercial Standard Title Co.,* Justice Cologne, in a concurring opinion, expressed the view that a cross-complaint for indemnity against a lawyer should be permitted under the principles of *American Motorcycle Assn.* v. *Superior Court, supra,* 20 Cal.3d 578. (*Commercial Standard Title Co.* v. *Superior Court, supra,* 92 Cal.App.3d at p. 946.)

Between the time the defendants filed the action for indemnity in July 1987 and its dismissal in June 1989, only two California cases dealt with the issue at hand. (*Holland* v. *Thacher* (1988) 199 Cal.App.3d 924 [245 Cal.Rptr. 247]; *Lewis* v. *Purvin* (1989) 208 Cal.App.3d 1208 [256 Cal.Rptr. 827].) In both of these cases, the courts held a claim against a successor attorney was adverse to public policy. However, at no time during this period was *Parker* overturned.

In view of this conflict among the appellate judiciary, and in the absence of a resolution by the Supreme Court, it cannot be said no reasonable attorney would have thought the claim for indemnity against appellants to be tenable. We therefore conclude the trial court properly decided there was probable cause for the institution of the indemnity action against appellants. The existence of such probable cause defeats the action for malicious institution of the underlying action.

The judgment is affirmed.[2]

Wallin, Acting P. J., and Sonenshine, J., concurred.

---

[2]For the benefit of the parties, and, in the perhaps futile hope to finally break this daisy chain of litigation after 15 years, we note that, in the light of the uncertainty of the law discussed herein, there was probable cause for the institution of appellants' action for malicious institution of the indemnity suit.