109 Cal.Rptr.2d 678 (2001)
90 Cal.App.4th 1367
GURSEY, SCHNEIDER & CO. et al., Plaintiffs and Appellants,
v.
WASSER, ROSENSON & CARTER et al., Defendants and Respondents.
No. B142728.
Court of Appeal, Second District, Division Seven.
July 25, 2001.
As Modified on Denial of Rehearing August 23, 2001.
Review Granted November 14, 2001.
*680 Chapman, Glucksman & Dean, Randall J. Dean, Los Angeles, and Allen A. Mescobi for Plaintiffs and Appellants.
Musick, Peeler & Garrett, Costa Mesa, Cheryl A. Orr, Los Angeles, and Brett D. Watson, Searcy, Ark., for Defendants and Respondents.
*679 JOHNSON, Acting P.J.
In this case we hold public policy considerations do not bar a suit for indemnity by an accountant against a lawyer who represented the same client at the same time, where the client originally sued both lawyer and accountant for malpractice but the client's malpractice suit against the lawyer was barred by the statute of limitations. Therefore we reverse the trial court's order sustaining respondents' demurrer without leave to amend.

FACTS AND PROCEEDINGS BELOW
This case arises out of divorce litigation between Deborah Pratt and Don Bellisario, who were married in June 1984. Bellisario is a successful writer, creator, producer and director of many television shows including Magnum PI, Airwolf, and Quantum Leap. Pratt filed for dissolution of marriage on September 10, 1991, and retained respondent Wasser, Rosenson & Carter as her counsel in 1992. The Wasser firm negotiated a marital settlement agreement on Pratt's behalf, which was signed on October 7, 1994. A judgment of dissolution of marriage (status only) was entered on October 30, 1992, and a further judgment of dissolution of marriage on reserved issues was entered on October 7, 1994. The Wasser firm withdrew as counsel for Pratt in December 1994.
After the Wasser firm withdrew as her counsel, Pratt discovered Bellisario had failed to disclose significant community property assets including certificates of deposit, individual retirement accounts, pension plans, and fees relating to the Quantum Leap television program. She filed a motion to set aside the judgment of dissolution on reserved issues, contending she signed the marital settlement agreement because of Bellisario's fraud. The motion was supported by a declaration from Pratt's business manager regarding the undisclosed assets. The family court denied the motion, observing Pratt's remedy was a malpractice action against her former counsel and accountants.
Pratt filed a malpractice action against the Wasser firm and three of its members on April 22, 1997. Wasser successfully moved to compel arbitration, and on July *681 15, 1998, the arbitrator (Jerry K. Fields, Judge of the Superior Court, Retired) ruled in favor of Wasser based on the statute of limitations.
Pratt also sued Gursey, Schneider & Co. and two of its employees, Michael Miskei and David Cantor, who had been employed as forensic accountants in connection with her dissolution action. Miskei represented Pratt at a meeting of Pratt's and Bellisario's accountants, during which they reached agreement on the primary financial issues in the dissolution case. After Pratt's malpractice action was ordered to arbitration, the arbitrator found the Gursey defendants failed to adequately review Bellisario's financial records, and "although they did not review the records ... and had failed to inform [Pratt] of said fact, they not only allowed [Pratt] to settle her dissolution action with Don Bellisario, but encouraged her to do so indicating that it was the best she could do even in a trial." The arbitrator awarded Pratt "the sum of $2,472,752 against Defendants Gursey, Schneider & Co., LLP, Michael Miskei, and David Cantor jointly and severally."
On December 8, 1999, Gursey, Miskei and Cantor filed suit against the Wasser firm and the individual respondents,[1] seeking equitable indemnity, declaratory relief, and apportionment in connection with the arbitration award against Gursey and in favor of Pratt.
Wasser demurred to the complaint, arguing public policy bars equitable indemnity claims against attorneys by non-clients. Gursey opposed the demurrer on the ground it was an intended beneficiary of the attorneys' legal services. The trial court sustained the demurrer without leave to amend. In so doing, it relied on Major Clients Agency v. Diemer,[2] in which the Court of Appeal discussed public policy considerations surrounding the attorney-client relationship, and held an entertainment agent could not maintain a suit against the client's attorneys.[3] Gursey timely appealed from the resulting judgment, and we now reverse the trial court's ruling sustaining the demurrer.

DISCUSSION

I. PUBLIC POLICY CONSIDERATIONS DO NOT BAR GURSEY'S INDEMNITY ACTION AGAINST WASSER.

We review de novo the trial court's order sustaining the demurrer. "An appeal from a judgment entered after the sustaining of a demurrer without leave to amend presents anew the question whether `it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants,' which is `a pure question of law' [Citations.] We construe the allegations of the complaint liberally `with a view to substantial justice between the parties.' [Citations.]"[4] In other words, "the complaint is reviewed de novo to determine whether it contains sufficient facts to state a cause of action. [Citation.] In doing so, we accept as true the properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed."[5] For purposes of the demurrer at issue here, Gursey *682 has adequately alleged Wasser's partial responsibility for the harm suffered by Pratt. However respondents argue, and the trial court agreed, public policy considerations nevertheless bar Gursey's claim for indemnity.
Ordinarily, the equitable indemnity rule established in American Motorcycle Assn. v. Superior Court[6] would permit a concurrent tortfeasor (Gursey) to obtain partial indemnity from another concurrent tortfeasor (Wasser) on a comparative fault basis. However, many California courts have held suits for partial equitable indemnity against lawyers are a different matter, based on public policy considerations which bar such lawsuits in certain circumstances.[7] The question in this case is whether these same public policy considerations, or some form of them, likewise apply to prevent Gursey's suit. We hold they do not.

A. The "Majority Rule" Among California Courts of Appeal Precludes an Indemnity Suit By a Lawyer Against Another Lawyer, Where Such a Suit Would Create a Conflict of Interest or Interfere With an Existing Attorney-Client Relationship.

In its tentative ruling, which it ultimately adopted as its final ruling on Wasser's demurrer, the trial court stated "Third parties may generally not pursue equitable indemnity and negligence claims against attorneys as a matter of law and public policy. [Citation.] The policy for such preclusion under the law is that such third party actions arising out of an attorney's malpractice may threaten the attorney's undivided loyalty to the client. [Citation.] While the general rule and most cases concern attorney indemnity and negligence claims against predecessor attorneys who represented the same client, the rule has been extended to non-attorneys. [Citation.]" As will be explained below, the rule is not as broad as the trial court suggested in this statement. Nor does the rule or its underlying policies apply to the allegations in appellant's complaint.
Although the California Supreme Court has not spoken on the issue, according to the majority of Court of Appeal decisions in California, a lawyer sued by a former client for professional negligence cannot seek indemnity from a successor lawyer, subsequently retained by the client.[8] Most of the California cases announcing the rule involve facts where the public policy is strongest against allowing indemnity *683 actions.[9] For example, in Goldfisher v. Superior Court,[10] the two law firms provided serial representation to the same client in the same matter. Law Firm I mishandled the case, and the client replaced it with Law Firm II. The client directed Law Firm II to sue Law Firm I for malpractice, and Law Firm I filed a cross-action for indemnity against Law Firm II.[11] The court, following a line of similar cases,[12] held "To encourage claims of indemnification where two lawyers successively represented the same client is not for the benefit of the client. Differences between lawyer and client respecting malpractice should be limited to themselves. The facts which generally germinate the relief sought at bench are pregnant with the seed of exacerbated conflict. The inevitable consequence is a corrosion of the sacred attributes of complete confidentiality and undivided loyalty which are the heart of the relationship between lawyer and client. It is our considered judgment the potential damage involved is grave and inevitable. On balance any loss of an asserted right is of small consequence when measured against the public interest." [13]
*684 Certainly in cases like Goldfisher, there is a real conflict on the part of Law Firm II. In filing suitand litigating and potentially settling the legal malpractice case against Law Firm I, Law Firm II must be mindful it may be compelled to contribute some of its own money to the verdict or settlement being sought on behalf of an existing client. In such a case, there indisputably is an actual and existing conflict because the more Law Firm II wins for the client, the greater the firm's own potential exposure in the indemnity action. Moreover, in many cases Law Firm I may be using the indemnity suit as a tactic to disqualify Law Firm II from prosecuting the malpractice case against Law Firm I, thereby denying the client his or her counsel of choice in the malpractice action. Finally, the confidentiality of the client's communications with Law Firm II, before and even after it filed the malpractice suit against Law Firm I, may be compromised. The public policy concerns are obvious in these cases where the malpractice defendant, Law Firm I, pursues an indemnity action against the firm representing the plaintiff in the malpractice case, Law Firm II. However, a handful of California cases have extended the attorney public policy exception beyond this classic scenario.
In Kroll & Tract v. Paris & Paris, the Court of Appeal held the attorney public policy exception was properly extended to bar an indemnity cross-complaint between two law firms who had concurrently represented the dissatisfied client, Firm I as independant Cumis counsel pursuant to a reservation of rights by the client's insurer and Firm II as insurance defense counsel.[14] The two firms represented the client concurrently, until Firm I asked Firm II to take on the full defense just 10 days before trial.[15] The client lost the lawsuit and sued Firm II for malpractice. Firm II cross-complained against Firm I for equitable indemnity.[16] The Court of Appeal held the trial court correctly sustained Firm I's demurrer to Firm II's cross-complaint, citing the public policy reasons underlying the attorney public policy exception. The court gave particular weight to the importance of protecting confidential attorney-client communications.[17] It held the client "expressly preserved the privilege as to [Firm I] by choosing not to sue it for malpractice," thus "if the indemnity action were allowed, [Firm I] would be unable to defend itself to the extent that its actions depended on client communications."[18] Accordingly, the indemnity action was barred. The court noted, however, its decision would not cause Firm II to pay more than its fair share of malpractice damages, because *685 "Even without the indemnity cross-complaint, [Firm II] can show the negligence of [Firm I] was the cause of [the client's] injury through the affirmative defense of comparative negligence, thereby reducing any liability it may have." [19] In contrast, the arbitrator in the present case specifically disallowed this defense and found Gursey liable for all of the client's malpractice damages, even while conceding Wasser's negligence contributed to the damages.[20] Moreover, even though it did not permit the indemnity action to proceed on the facts before it, the court recognized the necessity for analyzing the public policy issues based on the facts of each particular case, stating "we do not suggest that a cross-complaint for indemnity would never be allowed against an attorney involved in the concurrent representation of a joint client."[21]
Another appellate decision applied the attorney public policy exception to prevent an indemnity suit by a non-lawyer third party against a law firm. In Rowell v. Transpacific Life Ins. Co., an insured sued its insurer for bad faith. The insurer sought indemnity from the lawyer who had represented the insured in the underlying litigation over the insurance claim and was also representing him in the bad faith action. In its indemnity action the insured argued, inter alia, the lawyer's delay in pursuing the claim exacerbated the damage caused by its own delay.[22] The court held the indemnity action could not proceed. The policy rationale for precluding such a suit was the same as in the classic Law Firm I v. Law Firm II cases. Once again, the effect of allowing the indemnity suit would have been to drive a wedge between the client and the client's current lawyer in their bad faith action against the insurance company. The court held in such a situation, "The potential of conflict between the client's best interest and the course which the lawyer must take to minimize his own exposure to a cross-complaint from the adversary is untenable in view of the lawyer's duty of undivided loyalty to his [or her] client."[23]
In Major Clients Agency v. Diemer,[24] the case relied on by the trial court herein, the court refused to permit a suit by a writer-producer's agent against the writer-producer's lawyer. Respondents and the dissent herein construe Major Clients as yet another extension of the attorney public policy exception to the general rule permitting equitable indemnity. However, as explained below, Major Clients is not an equitable indemnity case and does not support the trial court's ruling.

B. Public Policy Considerations Do Not Bar An Indemnity Suit Between Lawyers Who Jointly Represented the Same Client In the Same Matter, Where Neither Lawyer Still Represents the Client At the Time Of the Indemnity Suit.

The present case is readily distinguishable from those relied upon by Wasser and by the trial court. In Major Clients Agency v. Diemer,[25] the case relied upon most heavily by the trial court and the dissent *686 herein, the agent sought compensation for damages he himself suffered in the form of a reduced commission, rather than indemnity for the client's damages caused by the lawyer's and agent's joint malpractice. Moreover, as we have seen, the facts of the present case are vastly different from the "Law Firm I sues Law Firm II while Law Firm II is still representing Client" fact pattern seen in cases such as Goldfisher.[26] The present case arose out of a joint malpractice suit by Pratt against both Gursey and Wasser, both of whom jointly represented Pratt in the underlying action, and neither of whom still represented her at the time of Gursey's indemnity action. Accordingly, neither confidentiality nor loyalty concerns are sufficiently compelling to bar Gursey's indemnity action against Wasser.

1. Gursey's Indemnity Action Is Not Barred By Considerations Of Attorney-Client Confidentiality.

One of the policies underlying the general rule against indemnity in the Law Firm I v. Law Firm II scenario is the importance of protecting attorney-client confidentiality. This policy of confidentiality is embodied in the attorney-client privilege, which protects from disclosure "a confidential communication between client and lawyer."[27] There can be no doubt this policy is a venerable and important one. In Mitchell v. Superior Court, the California Supreme Court held "While it is perhaps somewhat of a hyperbole to refer to the attorney-client privilege as `sacred,' it is clearly one which our judicial system has carefully safeguarded with only a few specific exceptions."[28]
One of these "few specific exceptions" is codified in Evidence Code section 958, which provides "There is no privilege under this article as to a communication relevant to an issue of breach, by the lawyer or by the client, of a duty arising out of the lawyer-client relationship." Generally, a client who sues his or her lawyer for legal malpractice waives the privilege by doing so, thus enabling the defendant lawyer to disclose, to the extent necessary to defend against the action, information otherwise protected by the attorney-client privilege.[29]
In the Law Firm I v. Law Firm II indemnity scenario the two law firms represented the client in successive stages of a case. By the time the second law firm is employed the first law firm already has committed its alleged malpractice and completed its representation of the client. Indeed the second lawyer usually is hired in an attempt to minimize the damages the client suffers from the first lawyer's malpractice. Because they are involved in completely different phases of the case, the client's confidential communications with Law Firm I are not intertwined with his confidential communications with Law Firm II. Accordingly, when the client hires Law Firm II to sue Law Firm I, he only waives the privilege as to those communications he had with Law Firm I during the phase of the underlying case during which *687 he was represented by Law Firm I. According to the rationale of the majority California rule, allowing Law Firm I to pursue an indemnity action against Law Firm II would place Firm II in an untenable situation. The client has not sued Law Firm II for malpractice and therefore has not waived the privilege as to the phase of the underlying litigation during which Law Firm II provided representation. Therefore Law Firm II cannot defend the indemnity lawsuit without divulging privileged client communications or obtaining an express waiver from the client. Furthermore, since Law Firm II is representing the client in the malpractice case against Law Firm I, the indemnity suit might also open up communications between the client and Law Firm II related to the pursuit of the malpractice action, communications once again Law Firm II could not reveal without obtaining an express waiver from the client. This is a dilemma Law Firm II and the client should not be forced to confront. In such a situation, the indemnity lawsuit is barred, based in part on the important public policy of preserving attorney-client confidences.[30]
However, the policy of protecting attorney-client confidentiality is not implicated in the present case. Here the client, Pratt, employed Gursey and Wasser to work together on the same case. This was not successive but concurrent representation in the same matter. The confidential communications the client made to her representatives during that single litigation were so interrelated the client's waiver as to one constitutes a waiver as to both. Moreover, in this particular case, Pratt sued both Gursey and Wasser for malpractice, thereby explicitly waiving the privilege as to her communications with both of them as to matters relating to the alleged malpractice. There is no existing attorney-client relationship between Pratt and Wasser to protect, and the privilege has already been waived as to the alleged malpractice. Therefore, permitting Gursey's indemnity suit to proceed does not offend the important public policy of safeguarding attorney-client confidences. In the words of the dissent herein, "attorney-client confidentiality is not a concern" in this case.[31]

2. Gursey's Indemnity Action Is Not Barred By Considerations of Conflict of Interest.

The cases relied on by Wasser, the trial court, and the dissent placed great emphasis on the lawyer's duty of undivided loyalty to the client, which in those cases would be impinged upon by permitting an indemnity action to go forward. In Rowell,[32] the indemnity defendant was the client's lawyer in the malpractice action. Thus the indemnity suit against the client's current lawyer raised policy concerns regarding that law firm's undivided loyalty in its present representation of the client in the malpractice action. In Kroll & Tract,[33] *688 the Court of Appeal found a potential for divided loyalties based on the unique tripartite relationship between the client, its personal counsel, and defense counsel retained by its insurance carrier.[34]
In the case before this court, however, the public policy concerns raised by the facts of cases like Kroll & Tract, Rowell, and Goldfisher are not present. Thus, they do not bar the cross-complaint for equitable indemnity. First, the indemnity plaintiff and indemnity defendant were involved in joint representationnot successive representationof the client. That representation occurred at the same time in the same case.[35] Second, there could be no impairment of either's ongoing loyalty to the client because this case presents no issue of conflicting loyalties between personal counsel and insurance defense counsel, and neither the lawyer nor the accountant was still representing the client at the time of the indemnity action. Third, the client sued both for their joint malpractice, and thus waived whatever remaining conflicts or duties of loyalty that may have existed between either the law firm or the accounting firm and their former joint client. Indeed, the client's action would have proceeded to trial on the merits against both malpractice defendants but for the shorter statute of limitations for attorney malpractice.[36] Permitting Gursey's indemnity action to proceed does not raise any new conflict issues beyond those the client waived by filing the malpractice action against both the law firm and the accounting firm.

a. California Courts Have Permitted Indemnity Suits Based on Joint Representation, Where the Indemnity Defendant Does Not Represent the Client At the Time Of the Indemnity Action.

Our analysis is consistent with several California cases permitting indemnity suits by and against lawyers. For example, in Crouse v. Brobeck, Phleger & Harrison, the Court of Appeal permitted an attorney's action for equitable indemnity against the client's former counsel.[37] In Crouse, Lawyer gave Client legal advice about the sale of a limited partnership. When the transaction turned out badly, Client brought an action against Lawyer, the law firm in which Lawyer was a former partner (Firm I), and Firm II, in which Lawyer became a partner during the representation of Client. Lawyer and Firm II filed a cross-complaint for equitable indemnity against Firm I,
In permitting the action to proceed, the Court of Appeal reasoned the public policy concerns were not applicable in a case where the subsequent attorney seeks equitable indemnity against the former attorney, because the former attorney is not subject to any conflict of interest and has no continuing privileged communications or work product to protect.[38] The court also held Lawyer and Firm I "could be concurrent tortfeasors for the injury caused [during Lawyer's tenure at Firm I]," and thus there was no "impediment to [Lawyer's] right to equitable indemnity from [Firm I] under traditional AMA principles *689 of equitable indemnity among concurrent tortfeasors whose acts of negligence unite to cause a single injury. (AMA, supra, 20 Cal.3d at p. 598, 146 Cal.Rptr. 182, 578 P.2d 899.)"[39]
Similarly, in Pollack v. Lytle,[40] the court permitted a suit for indemnity between lawyers who had represented the client at the same time in the same matter. Law Firm I arranged for Law Firm II to act as trial counsel, but Law Firm II did not properly prepare the case for trial. Unaware of Law Firm II's failure to properly prepare the case, Law Firm I and the client rejected a lucrative pretrial settlement offer. Law Firm II took the case to trial, lost, and induced the client to sue Law Firm I for malpractice. Law Firm I cross-complained for indemnity against Law Firm II, and the trial court sustained Law Firm II's demurrer without leave to amend. The Court of Appeal reversed. It recognized the general rule holding a successor law firm owes no duty to its predecessor, but held the public policy considerations underlying the rule did not apply in the case of associate counsel working concurrently.[41] It concluded under agency principles, the associate law firm owes the principal law firm the same duties it owes the client, and "Accordingly, public policy considerations do not mandate that an associate remain free from liability for a breach of the duty owed to [its] principal."[42]
Most recently, a suit for indemnity between concurrent counsel was permitted in Musser v. Provencher.[43] Musser represented the client in divorce proceedings. When the client's husband filed for bankruptcy, Musser arranged for Provencher, a bankruptcy specialist, to obtain relief from the automatic stay imposed by the bankruptcy court. Provencher failed to obtain such relief, and instead erroneously advised Musser to go ahead with a hearing regarding spousal and child support. Musser obtained an award of support, but the award was reversed on appeal because the hearing had violated the automatic stay.[44] The client settled with her husband for less than the original support order, and brought suit against Musser for malpractice and breach of contract. Musser settled with the client, and also settled the client's husband's claim, which was based on the violation of the automatic stay. She then cross-complained against Provencher, and the trial court granted nonsuit. The Court of Appeal reversed.
The Court of Appeal reviewed at some length the California case law dealing with suits for indemnity among lawyers.[45] It concluded "the concurrent representation situation presents a much less certain potential for conflict of interest than where *690 predecessor counsel seeks indemnity from successor counsel."[46] Analyzing the facts of the case before it, the court held "we cannot see at any time during the joint representation of Scott by Musser and Provencher that there was a real potential for conflict of interest ... It would appear extremely unjust to bar Musser from seeking indemnity or contribution from Provencher when Musser was sued by Scott for damages allegedly attributable to Provencher's tortious conduct, absent a real potential for conflict between Provencher's duty to Scott and his duty to Musser during the course of their joint representation or of a real impact upon attorney-client confidentiality presented by Musser's indemnity action."[47]

b. Major Clients Agency v. Diemer Is Inapposite And Does Not Support the Trial Court's Ruling.

The reliance of the trial court and the dissent on Major Clients Agency v. Diemer,[48] is based on a misunderstanding of the facts and procedural posture of that case. While the Court of Appeal in Major Clients discussed at some length the policy considerations implicated in the attorney indemnity cases, the outcome of the case was ultimately compelled by two well-established and unrelated rules of law. Thus the court's "public policy" discussion was neither necessary nor even particularly germane to the outcome.[49]
In Major Clients, the Court of Appeal affirmed the trial court's sustaining of a demurrer without leave to amend in a suit by a writer-producer's agent against the writer-producer's lawyer. The lawyer and the agent had together negotiated a contract for their mutual client with a television company, and the agent was entitled to commissions under the contract. When the writer/client was terminated, he sued the television company and settled for less than the full amount due under the contract. The client and the agent settled their own controversy over the agent's commissions, with the agent receiving less than he would have if the client had received the full amount due under the contract with the television company. The agent then sued the writer's lawyer, claiming the lawyer failed to protect his client's interests during the contract negotiations, thus causing a diminution in the agent's commission.[50] The outcome of the case rested on two longstanding rules of California law: the absence of a duty owed by a lawyer to a non-client, and the requirement an indemnity plaintiff allege he has become liable to pay economic damages to a third party, which should equitably have been paid by the indemnity defendant.[51]
First, the agent in Major Clients sought compensation for his own damages, not for damages suffered by the client. Such suits have long been barred in California, as the court noted in Major Clients: "An attorney generally will not be held liable to a third person not in privity of contract with him since he owes no duty to anyone other than his client."[52] This rule has a sound grounding in public policy: because a lawyer's whole duty must be *691 to his client, he cannot have a duty to a third party.[53] The lawyer in Major Clients would have a clear conflict if he were required to maximize the agent's compensation, because his only proper goal was maximization of the client's compensation.
Second, the court in Major Clients observed the agent's complaint alleged as damages sums which it "may be required to pay" to the client, but held such language was insufficient to assert the agent had "suffered a pecuniary loss by way of payment of a judgment or settlement for alleged negligent conduct. [Citation.]"[54] Therefore, it concluded "[i]nasmuch as the basis for the remedy of equitable indemnity is restitution, a pleading is fatally defective if there is an absence of an allegation that [the agent] has discharged a liability that should be the responsibility of [the lawyer] to pay. [Citation.]"[55] In the absence of such an allegation, it held the demurrer was properly sustained for failure to state a cause of action for indemnity.[56]
Perhaps in an attempt to avoid these two obvious and fatal flaws in his complaint, the agent argued his case should proceed under the rationale in Parker v. Morton,[57] the sole California case permitting an attorney to sue his successor for indemnity. In response, the lawyer cited Held v. Arant,[58] and other Law Firm I v. Law Firm II cases prohibiting indemnity actions against successor counsel.[59] The Court of Appeal correctly noted "the successor attorney malpractice cases relied upon by Major Clients and Diemer are not directly relevant."[60] Nevertheless, in dicta it opined the Law Firm I v. Law Firm II cases should apply to bar the agent's suit because the agent "was a potential adversary on the issue of commission fees which became an actual adversary when it sued [the writer] for fees. If an attorney is saddled with a duty to a potentially adverse party, then his loyalty to the client cannot be undivided."[61]
The nature of the potential adversity constitutes a crucial factual difference which provides the "principled distinction" and "discernable difference" the dissent finds lacking between the present case and Major Clients. Whatever the merits of *692 the conflict of interest analysis in Major Clients, it has nothing to do with the case before us because the type of adversity identified by the court in Major Clients is simply not present in this case. Gursey was Pratt's accountant, not her show business agent, and Gursey and Wasser were providing litigation services on an hourly basis, not negotiating a contract which would determine the commission fees one or both would receive.[62]
Here, both Gursey and Wasser owed duties only to Pratt, not to one another, during their joint representation of Pratt in the underlying matter. We cannot agree with the dissent's conclusion an attorney's duty of loyalty is compromised by permitting an indemnity suit between two lawyers who jointly represented the client in the same matter, where neither of them represents the client at the time of the indemnity action. While the dissent is concerned with "whether, during the time it represents its client, Wasser should also have to consider the possibility of a subsequent suit for malpractice/indemnity by its client's advisors," we fail to see any additional potential conflict of interest in such a scenario. First, as discussed above, Gursey sued Wasser for indemnity, not for malpractice. That is, Gursey did not claim Wasser breached a duty it owed Gursey, but rather alleged the law firm had breached a duty it owed Pratt. Second, the dissent apparently assumes the two firms involved in a joint representation will have "undesirable self-protective reservations" or "less than total devotion" to the client, only if Law Firm A is allowed an indemnity suit against Law Firm B should the client choose to sue only Law Firm A for malpractice. We find this assumption unrealistic.
As the dissent points out, a law firm is always subject to a suit for malpractice by its own client. We suspect this specter of a suit by the client, rather than of an indemnity suit by the client's other advisors, is the cause of most of the "self-protective" conduct the dissent refers to. A lawyer who is inclined to fill the file with memos designed to build a defense to the case the client might file will do so whether or not there is another lawyer also working on the case. At the time the joint representation is occurring neither firm will know whether the client would sue one or both of themor, if only one, which oneor, of course, whether there will be occasion to file a malpractice suit against either. Thus, we still do not see any conflicts of interest which are caused or even exacerbated by the availability of an indemnity action against joint counsel.
Indeed, a rule leaving it to clients to choose which of two joint counsel to sue (and barring the chosen one from seeking indemnity) would encourage both firms to distort their representation. Faced with "all or nothing" liability should the client eventually bring a malpractice action against one of them, both firms would have an incentive to spend time currying favor with the client and discrediting the other firm, in order to avoid the possibility of having to bear the full financial burden of the client's malpractice damages. Surely such tactics ill-serve the client and illustrate just the sort of divided loyalties the dissent wishes to avoid.
*693 Courts have long approached indemnity actions on a case-by-case basis, as described by the Court of Appeal in Herrero v. Atkinson:[63] "The duty to indemnify may arise, and indemnity may be allowed, in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case."[64] In a case such as the one before us, where Gursey and Wasser jointly represented Pratt and both representations had ceased by the time of the indemnity action, there is no public policy reason to bar Gursey's claim for indemnity.
Indeed, while case-by-case analysis is appropriate, for the reasons set forth above we do not hesitate to hold where the indemnity suit is between lawyers who concurrently represented the same client in the same matter, and neither party still represents the client at the time of the indemnity suit, an indemnity suit generally should be permitted to proceed. As we have seen, in such cases the policy considerations favoring indemnity far outweigh the policy considerations underlying the attorney indemnity exception set forth in cases like Goldfisher.[65] To the contrary, the policy considerations support permitting suits in such cases. The client will receive more undivided loyalty from both firms involved in the joint representationand less time wasted trying to curry favor and discredit the other firmif indemnity is allowed than if both firms are at the mercy of the client's choice of which firm to sue for malpractice. Accordingly, we see no reason, in equity and good conscience, to deny Gursey its day in court against Wasser.

II. THE ARBITRATOR COULD NOT AND DID NOT ADJUDICATE WASSER'S LIABILITY FOR THE DAMAGES SUFFERED BY PRATT.

In our view, the public policy considerations discussed above, standing alone, require us to reverse the judgment of the trial court. Therefore we need not discuss the merits of Gursey's contention the arbitrator found Wasser jointly and severally liable for Pratt's damages. However because the parties have extensively briefed the issue, and because it is likely to recur on remand, we address it, and hold the arbitrator's decision could not and did not constitute an adjudication of Wasser's liability for the damages suffered by Pratt.
In its complaint, Gursey alleged "In the Arbitration Award, the arbitrator found that [Gursey] and Wasser, Rosenson & Carter both were a cause of injury that Pratt sustained. Further, the Arbitrator held that Wasser, Rosenson & Carter and [Gursey] were jointly and severally liable for any injury that Pratt sustained." This allegation constitutes a conclusion of law more than an allegation of fact, and therefore it need not be accepted as true. Moreover, this allegation is contradicted by the arbitrator's award, which is attached as Exhibit "G" to Gursey's *694 complaint.[66] Because Wasser had been found not liable by reason of the statute of limitations in bifurcated proceedings before the arbitrator, it was not a party to the subsequent Gursey/Pratt arbitration proceedings. Accordingly, Wasser's liability to Pratt was never an issue in the Gursey/Pratt arbitration.
While the arbitrator clearly thought Wasser was also a cause of Pratt's damages, he plainly and properly found only the Gursey defendants jointly and severally liable. The finding of joint and several liability against Gursey means Gursey's negligence was a proximate cause of the injury to Pratt, and Gursey is therefore liable for the entire amount of her damages. This was not intended to, nor could it, have any affect on Gursey's ability to sue Wasser for equitable indemnity.[67]
Although we reject Gursey's contention regarding the effect of the arbitrator's ruling, we nevertheless hold its first cause of action for equitable indemnity states facts sufficient to constitute a cause of action, because it reasonably can be read to allege Gursey has suffered damages which should in fairness be paid by Wasser.

DISPOSITION
The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion. Appellant is entitled to recover its costs on appeal.
BOLAND, J.,[*] concurs.
WOODS, J., Dissenting:
I disagree with the majority's conclusion that there is no public policy reason to bar Gursey's claim for indemnity against Wasser. A lawyer's client should be protected "from even the possibility of less than total devotion to his interests by the attorney of his choice." [1] In my view, that possibility exists if a lawyer must consider, during his representation of the client, the prospect of personal exposure to suit by the client's other advisors. Moreover, if there is a balance to be struck between the public policy interest in ensuring the undiluted loyalty of a lawyer to his client's interests, and the policy considerations favoring the equitable allocation of damages among wrongdoers, the former should be given precedence. Accordingly, I respectfully dissent.
As the majority acknowledges, California courts over the last twenty years or so have held that public policy considerations bar lawsuits for partial equitable indemnity against lawyers in a variety of circumstances. The most obvious of these is that a lawyer sued by a former client for professional negligence cannot seek indemnity from a successor lawyer, subsequently retained *695 by that client. The reason is that the prospect of such a suit threatens to inhibit the successor attorney's undivided loyalty to the client. That is easy to discern: the second lawyer's decision about how to handle the problem created by the first lawyer should not be affected by self-protective considerations such as the potential for an indemnity suit by the first lawyer. Other policy reasons may also apply in cases involving successor lawyers. These are summarized in Kroll & Tract v. Paris & Paris;[2] they include that (a) a cross-complaint for indemnity by the predecessor lawyer in a malpractice suit may effectively deprive the client of her attorney of choice in the malpractice suit, and (b) such lawsuits jeopardize the preservation of the attorney-client relationship and attorney-client privilege. Over the years, courts have applied these policy considerations to other suits against lawyers, including suits by one law firm against another which concurrently represented the dissatisfied client,[3] and suits by other third parties against lawyers.[4]
The majority says that public policy concerns are not present in this case because (1) the representation by Gursey and Wasser was concurrent, (2) neither lawyer nor accountant was still retained by the client, so there could be no impairment of either's ongoing loyalty to the client, and (3) the client tried to sue both of them and could have done so but for the statute of limitations, so attorney-client confidentiality is not a concern. All that is true, but does not eliminate the other policy concern: namely, that subjecting an attorney to the prospect of legal obligations to his client's other advisors may inject undesirable self-protective reservations into the attorney's counseling role during the underlying representation. I consider this principle, which protects the client "from even the possibility of less than total devotion to his interests"[5] by his attorney, as more important than ensuring that one negligent professional be indemnified by another.
The case of Major Clients Agency v. Diemer,[6] described in the majority opinion, is illustrative. There, the court refused to permit a suit for indemnity by a writer-producer's agent against the writer-producer's lawyer. The court observed that the policy considerations that applied in other cases dictated the same result.[7] It cited the principles that (a) an attorney may be reluctant to accept cases that might result in indemnity claims, and (b) more importantly, if an attorney is faced with a potential indemnity claim, a sense of *696 self-preservation might impinge on the duty of undivided loyalty to the client.[8]
The court in Major Clients Agency specifically rejected the agent's argument that the "undivided loyalty" rationale did not apply. The agent argued there was no problem of undivided loyalty because the lawyer and the agent were not adversaries, worked together in the negotiation of the client's contract, and the lawyer was not faced with any conflict between his client's interests and those of his client's agent; the lawyer merely failed to recognize a flaw in the contract. Even so, the court said:
"[E]ven where there is but one course of action for an attorney to follow, the attorney must be free from the threat of potential liability in order to devote undivided loyalty to the client. Major Clients was a potential adversary on the issue of commission fees which became an actual adversary when it sued [the writer] for fees. If an attorney is saddled with a duty to a potentially adverse party, then his loyalty to the client cannot be undivided."[9]
No principled distinction exists between Major Clients Agency and the circumstances here. Even where the lawyer has only one course to follow, the duty of loyalty to the client "should not be diminished by imputing to him legal obligations to the client's other advisors, be they attorneys or acting in some other capacity, unless such parties are clearly intended beneficiaries of the legal services being rendered."[10]
The majority says the type of adversity identified in Major Clients Agency is not present in this case, and that this factual difference in the nature of the potential adversity is crucial. Certainly the facts are entirely different, but I see no discernable difference in principle in the potential adversity in the two cases. In Major Clients Agency, the agent was representing and negotiating for the writer in the underlying transaction, just as Gursey was acting to further Pratt's interests in this case. There is always a potential for adversityover fees or the result of the workif something goes wrong, as it did here.[11]
In short, allowing the client's forensic expert to sue the attorney for indemnity for the attorney's inadequate advice to the client would mean, in practical effect, that the attorney owes legal obligations to the client's other advisors as well as to the client. While one cannot predict precisely how this additional consideration might affect the lawyer's duty of loyalty to the client in any particular case,[12] it seems *697 unwise to permit the introduction of a necessarily distracting, self-protective consideration into the attorney-client relationship.[13]
I am well aware that there are cases in which other courts have permitted a partial indemnity action against a lawyer. These include Crouse v. Brobeck, Phleger & Harrison[14] and Musser v. Provencher.[15] In Crouse an attorney and his present law firm were permitted to sue his former law firm, where the client had sued all three of them for malpractice. The court found that the policy concerns that prohibit a suit by a predecessor lawyer against the subsequent attorneyavoiding conflicts of interest and protecting privileged communications and work productare not applicable to an indemnity claim by the subsequent attorney against the predecessor attorney.[16] While it is not necessary to argue the correctness of the principle stated in Crouse for all purposes, Crouse does not contradict the fundamental premise on which I would decide this case. Here, as in Crouse, there are no privileged communications to protect. However, other policy considerations, such as the duty of loyalty unimpaired by self-protective considerations, exist. In Crouse, the former law firm, during its representation of the client, had no conflicting or potentially conflicting interests at all. The firm's duty of loyalty to its client was completely unimpaired by any self-protective reservations, since there was no one else in the picture who might even potentially divert the firm's attention from its client's interests. Here, the court's decision to allow suit means that the lawyer has the client's other advisors to consider.
Finally, there is the recent case of Musser v. Provencher, also described in the majority opinion, allowing a suit for indemnity between concurrent co-counsel. I do not disagree with the Musser court's conclusion that concurrent representation situations may present a "much less certain" potential for conflict of interest than successor counsel cases.[17] I simply place a higher value on avoidance of even the possibility of dilution of the lawyer's total devotion to his client's interests. Moreover, Musser is distinguishable on its facts. For one thing, the court thought it "extremely unjust" to bar Musser's indemnity suit when she was also sued by her client under a respondeat superior theory for damages caused by Provencher's malpractice.[18] For another, in Musser the court *698 found no "real potential for conflict of interest" between Provencher's duties to the client and his duties to the lawyer who hired him (Musser).[19] In the case before this court, the question is not one of potential conflict between Wasser's duty to the client and its duty to Gursey; Wasser had no duty to Gursey. The question is whether Wasser should have to consider, during its representation of Pratt, possible exposure to a suit by Pratt's other advisors to whom Wasser otherwise owes no duty. I would answer no.
To sum up: In my view, a lawyer should not have to consider a possible personal exposure to suit by a client's other advisors during the representation of a client. That would "`tend to divert the attorney from single-minded devotion to his client's interests.'"[20] The policy considerations discussed in Major Clients Agency and its predecessor cases are applicable here, and Gursey's suit for partial equitable indemnity should be barred.[21]
NOTES
[1] Henceforth we will refer to appellants collectively as "Gursey," and to respondents collectively as "Wasser."
[2] Major Clients Agency v. Diemer (1998) 67 Cal.App.4th 1116, 79 Cal.Rptr.2d 613 (hereinafter "Major Clients").
[3] Major Clients, supra, 67 Cal.App.4th at pp. 1132-1133, 79 Cal.Rptr.2d 613.
[4] Schnall v. Hertz. Corp. (2000) 78 Cal.App.4th 1144, 1152, 93 Cal.Rptr.2d 439.
[5] G.L. Mezzetta Inc. v. City of American Canyon (2000) 78 Cal.App.4th 1087, 1091, 93 Cal.Rptr.2d 292 (emphasis added).
[6] American Motorcycle Association v. Superior Court (1978) 20 Cal.3d 578, 599, 146 Cal. Rptr. 182, 578 P.2d 899 (hereinafter AMA), 146 Cal.Rptr. 182, 578 P.2d 899 (one of several tortfeasors may, through a cross-complaint or in a separate action, seek indemnity from other parties whose fault contributed to the plaintiff's injury).
[7] For a description of this "chorus of cases," see Shaffery v. Wilson, Elser, Moskowitz, Edelman & Dicker (2000) 82 Cal.App.4th 768, 769-777, 98 Cal.Rptr.2d 419.
[8] California case law is not unanimous on this point, even in the Courts of Appeal. In Parker v. Morton (1981) 117 Cal.App.3d 751, 173 Cal.Rptr. 197 (hereinafter "Parker"), a divided Court of Appeal permitted Law Firm I's equitable indemnity cross-complaint against Law Firm II to proceed. While the case has been "distinguished, criticized or outright rejected by almost every [California] case that discusses it" (Kroll & Tract v. Paris and Pans (1999) 72 Cal.App.4th 1537, 1545, 86 Cal.Rptr.2d 78 [hereinafter "Kroll & Tract"]), the California Supreme Court has not settled the issue. Meanwhile, the supreme courts and appellate courts of other states are split almost evenly on the issue. See footnote 13, infra, for a discussion of these out-of-state cases.
[9] Gibson, Dunn & Crutcher v. Superior Court (1979) 94 Cal.App.3d 347, 353, 156 Cal.Rptr. 326 (citing public policy against "divert[ing] the attorney from single-minded devotion to his client's interests").
[10] Goldfisher v. Superior Court (1982) 133 Cal.App.3d 12, 183 Cal.Rptr. 609 (hereinafter "Goldfisher").
[11] Goldfisher, supra, 133 Cal.App.3d at p. 14, 183 Cal.Rptr. 609.
[12] Goldfisher, supra, 133 Cal.App.3d at p. 15, 183 Cal.Rptr. 609, citing Held v. Arant (1977) 67 Cal.App.3d 748, 134 Cal.Rptr. 422 (hereinafter "Held"); Commercial Standard Title Co. v. Superior Court (1979) 92 Cal.App.3d 934, 155 Cal.Rptr. 393; Gibson, Dunn & Crutcher, supra, 94 Cal.App.3d 347, 156 Cal.Rptr. 326; Rowell v. Transpacific Life Ins. Co. (1979) 94 Cal.App.3d 818, 156 Cal.Rptr. 679; Pollack v. Lytle (1981) 120 Cal.App.3d 931, 175 Cal. Rptr. 81 (hereinafter "Pollack").
[13] Goldfisher, supra, 133 Cal.App.3d at p. 22, 183 Cal.Rptr. 609 (footnote omitted). This states the position adopted by a majority of California Courts of Appeal. We note, however, the California "majority" view on this subject has never been adopted by the California Supreme Court, and is not shared by the courts in a number of jurisdictions including New York (Schauer v. Joyce (1981) 54 N.Y.2d 1, 444 N.Y.S.2d 564, 429 N.E.2d 83, 85 [existence of a duty between former and successor attorneys not a necessary predicate for indemnity action by successor attorney against former attorney], Illinois (Goran v. Glieberman (1995) 276 Ill.App.3d 590, 213 Ill.Dec. 426, 659 N.E.2d 56, 61 ["an attorney may seek contribution from a subsequent attorney where both attorneys worked on the same underlying cause"], Washington (Pappas v. Holloway (1990) 114 Wash.2d 198, 787 P.2d 30, 36-37 [former attorney sued by client may implead successor counsel and pierce the attorney-client privilege], and Massachusetts (Maddocks v. Ricker (1988) 403 Mass. 592, 531 N.E.2d 583, 589 ["When Lawyer II brings an action for malpractice on behalf of a client against Lawyer I, Lawyer II is not immunized from liability to Lawyer I for contribution if the negligence of each caused the same injury to the client"], among others. The majority California view is, however, shared with some other jurisdictions, with just about an even split among those courts which have considered the issue. On the other hand, the more recent jurisdictions to consider the issueMaryland in 2000 and West Virginia in 2001 have rejected the view of the California Courts of Appeal and allowed lawyers who both served the same client in the same legal action to seek indemnity from the other lawyer when they are sued by the client. (See Parler & Wobber v. Miles & Stockbridge (2000) 359 Md. 671, 756 A.2d 526; Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC (2001) 209 W.Va. 318, 547 S.E.2d 256.) In the recent case of Parler & Wobber v. Miles & Stockbridge, supra, the Court of Appeals of Maryland (the state's highest court) reviewed the split among jurisdictions, describing cases on both sides of the split (Parler, supra, 756 A.2d at pp. 539-543), and concluded "The holdings of our sister states that allow a former attorney to implead an assertedly negligent successor attorney for contribution or indemnification are more closely aligned with our view of Maryland law than our sisters [sic] states that do not. While we too are concerned with protecting the attorney-client privilege and the attorney-client relationship, this Court is reluctant to exempt a potential joint tortfeasor from accepting the blame for its negligent actions." (Id. at p. 542.)
[14] Kroll & Tract, supra, 72 Cal.App.4th at pp. 1540-1541, 86 Cal.Rptr.2d 78.
[15] Kroll & Tract, supra, 72 Cal.App.4th at p. 1541, 86 Cal.Rptr.2d 78.
[16] Kroll & Tract, supra, 72 Cal.App.4th at p. 1541, 86 Cal.Rptr.2d 78.
[17] Kroll & Tract, supra, 72 Cal.App.4th at p. 1542, 86 Cal.Rptr.2d 78 (indemnity lawsuits against successor counsel "jeopardize the policy of encouraging confidence and preserving inviolate the attorney-client relationship [citations]").
[18] Kroll & Tract, supra, 72 Cal.App.4th at pp. 1544-1545, 86 Cal.Rptr.2d 78.
[19] Kroll & Tract, supra, 72 Cal.App.4th at pp. 1544-1545, 86 Cal.Rptr.2d 78. (Id. at p. 1545, 86 Cal.Rptr.2d 78.)
[20] See page 24 and footnote 66, infra.
[21] Kroll & Tract, supra, 72 Cal.App.4th at p. 1544, fn. 4, 86 Cal.Rptr.2d 78.
[22] Rowell, supra, 94 Cal.App.3d 818, 156 Cal. Rptr. 679.
[23] Rowell, supra, 94 Cal.App.3d at p. 821, 156 Cal.Rptr. 679.
[24] Major Clients, supra, 67 Cal.App.4th 1116, 79 Cal.Rptr.2d 613.
[25] Major Clients, supra, 67 Cal.App.4th 1116, 79 Cal.Rptr.2d 613.
[26] Goldfisher, supra, 133 Cal.App.3d 12, 183 Cal.Rptr. 609.
[27] Evidence Code section 954.
[28] Mitchell v. Superior Court (1984) 37 Cal.3d 591, 600, 208 Cal.Rptr. 886, 691 P.2d 642.
[29] McDermott, Will & Emery v. Superior Court (2000) 83 Cal.App.4th 378, 383-384, 99 Cal. Rptr.2d 622.
[30] See, e.g., Kroll & Tract, supra, 72 Cal. App.4th at p. 1542, 86 Cal.Rptr.2d 78 ("such lawsuits jeopardize the policy of encouraging confidence and preserving inviolate the attorney-client relationship"). See also Solin v. O'Melveny & Myers (2001) 89 Cal.App.4th 451, 463-464, 107 Cal.Rptr.2d 456 (where Law Firm I sues Law Firm II for malpractice based on attorney-client relationship between Law Firm I and Law Firm II, suit must be dismissed because Law Firm II cannot defend suit without divulging confidences of the lawyers' joint client, who had not waived attorney-client privilege).
[31] Dissenting opinion at page 695.
[32] Rowell, supra, 94 Cal.App.3d 818, 156 Cal. Rptr. 679.
[33] Kroll & Tract, supra, 72 Cal.App.4th 1537, 86 Cal.Rptr.2d 78.
[34] Kroll & Tract, supra, 72 Cal.App.4th at pp. 1542-1543, 86 Cal.Rptr.2d 78.
[35] The two entities who were providing a joint representation at the same time in the same case were not two lawyers, but a lawyer and a forensic accountant, but that does not seem critical.
[36] A suit for equitable indemnity is not precluded by the fact it has the effect of resurrecting liability which would otherwise be barred by the statute of limitations. (Crouse v. Brobeck, Phleger & Harrison (1998) 67 Cal. App.4th 1509, 1547, 80 Cal.Rptr.2d 94 [hereinafter "Crouse"].)
[37] Crouse, supra, 67 Cal.App.4th 1509, 80 Cal.Rptr.2d 94.
[38] Crouse, supra, 67 Cal.App.4th at pp. 1545-1546, 80 Cal.Rptr.2d 94.
[39] Crouse, supra, 67 Cal.App.4th at p. 1548, 80 Cal.Rptr.2d 94.
[40] Pollack, supra, 120 Cal.App.3d 931, 175 Cal.Rptr. 81.
[41] Pollack, supra, 120 Cal.App.3d at pp. 942-943, 175 Cal.Rptr. 81.
[42] Pollack, supra, 120 Cal.App.3d at pp. 942-943, 175 Cal.Rptr. 81. We note several opinions following Pollack have discussed at some length the dissenting opinion therein, which expressed a view directly contrary to the decision we reach today. While those opinions refer the author of the Pollack dissent as "Justice Johnson," in fact the author of the dissent was the Hon. Barbara Jean Johnson, then of the Municipal Court, who was assigned to the case by the Chairperson of the Judicial Counsel. (See Pollack, supra, 120 Cal.App.3d at p. 931, fn.*, 175 Cal.Rptr. 81.) Thus the Pollack dissent was not written by the author of the present opinion. (See Joseph A. Saunders P.C. v. Weissburg & Aronson (1999) 74 Cal.App.4th 869, 872, 87 Cal. Rptr.2d 405 (referring to dissent in Pollack by "Justice Jonson"; Copenbarger v. International Ins. Co. (1996) 46 Cal.App.4th 961, 966, 54 Cal.Rptr.2d 1 ("Justice Johnson dissented in Pollack v. Lytle").)
[43] Musser v. Provencher(2001) 90 Cal. App.4th 545, 109 Cal.Rptr.2d 214 (hereinafter "Musser").
[44] Musser, supra, 90 Cal.App.4th at p. 650, 109 Cal.Rptr.2d 214.
[45] Musser, supra, 90 Cal.App.4th at pages 552-561, 109 Cal.Rptr.2d 214.
[46] Musser, supra, 90 Cal.App.4th at page 560, 109 Cal.Rptr.2d 214.
[47] Musser, supra, 90 Cal.App.4th at pages 560, 109 Cal.Rptr.2d 214.
[48] Major Clients, supra, 67 Cal.App.4th 1116, 79 Cal.Rptr.2d 613.
[49] See Major Clients, supra, 67 Cal.App.4th at pp. 1128-1130, 79 Cal.Rptr.2d 613 (discussing policy reasons for attorney exception to general rule permitting equitable indemnity).
[50] Major Clients, supra, 67 Cal.App.4th at p. 1121, 79 Cal.Rptr.2d 613.
[51] Major Clients, supra, 67 Cal.App.4th at pp. 1132-1133, 79 Cal.Rptr.2d 613.
[52] Major Clients, supra, 67 Cal.App.4th at p. 1132, 79 Cal.Rptr.2d 613 (citation and internal quotation marks omitted).
[53] Goodman v. Kennedy (1976) 18 Cal.3d 335, 339, 134 Cal.Rptr. 375, 556 P.2d 737 (where lawyer gave negligent advice to clients regarding sale of stock, lawyer "had no relationship to [non-client] plaintiffs that would give rise to his owing plaintiffs any duty of care in advising his clients that they could sell the stock without adverse consequences"); Fox v. Pollack (1986) 181 Cal.App.3d 954, 960, 226 Cal.Rptr. 532 ("in general, attorney is not liable to non-client for consequences of professional negligence"); Burger v. Pond (1990) 224 Cal.App.3d 597, 604-605, 273 Cal. Rptr. 709 (lawyer owes no duty to non-client who is not intended beneficiary of lawyer's services). Along with the dissent, we agree the trial court did not err in concluding Gursey was not an intended beneficiary of the legal services agreement between Wasser and Pratt.
[54] Major Clients, supra, 67 Cal.App.4th at p. 1131, 79 Cal.Rptr.2d 613.
[55] Major Clients, supra, 67 Cal.App.4th at p. 1131, 79 Cal.Rptr.2d 613.
[56] Major Clients, supra, 67 Cal.App.4th at pp. 1132-1133, 79 Cal.Rptr.2d 613. The Court of Appeal also held the trial court did not abuse its discretion in denying leave to amend, because the agent had never made "an offer to allege facts which would establish a cause of action." (Id. at p. 1133, 79 Cal.Rptr.2d 613.)
[57] Parker, supra, 117 Cal.App.3d 751, 173 Cal.Rptr. 197.
[58] Held, supra, 67 Cal.App.3d 748, 134 Cal. Rptr. 422.
[59] Major Clients, supra, 67 Cal.App.4th at p. 1123, 79 Cal.Rptr.2d 613.
[60] Major Clients, supra, 67 Cal.App.4th at p. 1130, 79 Cal.Rptr.2d 613.
[61] Major Clients, supra, 67 Cal.App.4th at pp. 1124-1125, 79 Cal.Rptr.2d 613.
[62] The Major Clients scenario is much more analogous to a situation where Law Firm A and Law Firm B provide joint representation in a contingency fee case, and agree to split the contingency fee if the case is successful. If Law Firm A commits malpractice and loses the case, and Law Firm B sues Firm A for the contingency fee it would have earned had the suit been won, such a suit would be clearly improper. We would not allow such a suit because, as in Major Clients, both firms only had a duty to the clientnot to each other. (American Equity Insurance Company v. Beck, supra, 90 Cal.App.4th 162, 108 Cal.Rptr.2d 728 (co-counsel in contingency fee matter owe no fiduciary duty to one another; each owes duty of loyalty solely to client).)
[63] Herrero v. Atkinson (1964) 227 Cal.App.2d 69, 38 Cal.Rptr. 490 (hereinafter "Herrero").
[64] Herrero, supra, 227 Cal.App.2d at p. 74, 38 Cal.Rptr. 490.
[65] Goldfisher, supra, 133 Cal.App.3d 12, 183 Cal.Rptr. 609.
[66] Dodd v. Citizens Bank (1990) 222 Cal. App.3d 1624, 1627, 272 Cal.Rptr. 623 (facts in exhibits to complaint are given precedence over inconsistent allegations in the complaint).
[67] In the arbitration, Gursey argued it should not be jointly and severally liable for all of Pratt's damages, because Wasser was also a cause of the damages and Gursey would likely be precluded from seeking indemnity because of the public policy issues raised by Wasser in these proceedings. The arbitrator, however, noted "It is not clear that Kroll and Tract [, supra, 72 Cal.App.4th 1537, 86 Cal.Rptr.2d 78] [sic] authority to prevent Gursey from cross-complaining for indemnity against the Wasser firm." In view of this court's determination in section I of this opinion, the arbitrator proved prescient.
[*] Judge of the Superior Court for the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Pollack v. Lytle (1981) 120 Cal.App.3d 931, 947, 175 Cal.Rptr. 81 (Judge Johnson dissenting), citing Mason v. Levy & Van Bourg (1978) 77 Cal.App.3d 60, 66-67, 143 Cal.Rptr. 389.
[2] Kroll & Tract v. Paris & Paris (1999) 72 Cal.App.4th 1537, 1542, 86 Cal.Rptr.2d 78.
[3] Kroll & Tract, supra.
[4] E.g., Rowell v. Transpacific Life Ins. Co. (1979) 94 Cal.App.3d 818, 156 Cal.Rptr. 679.
[5] Pollack v. Lytle, supra, 120 Cal.App.3d at p. 947, 175 Cal.Rptr. 81 (Judge Johnson dissenting).
[6] Major Clients Agency v. Diemer (1998) 67 Cal.App.4th 1116, 79 Cal.Rptr.2d 613.
[7] Major Clients Agency, supra, 67 Cal.App.4th at p. 1130, 79 Cal.Rptr.2d 613. The majority points out that the outcome in Major Clients Agency was ultimately compelled by unrelated rules of law, and that the court's public policy discussion was neither necessary nor germane to the outcome. In my view the policy discussion was pertinent, because Major Clients' complaint alleged Major Clients was "entitled to indemnification from [the lawyer] for its attorney's fees and costs incurred in defending [the client's cross-claim ...., and for `the sums to which Major Clients may be required to pay to [the client] in connection with the Cross Claim.....'" (67 Cal. App.4th at p. 1123, 79 Cal.Rptr.2d 613.) In any case, the fact that the court's discussion may have been unnecessary does not, in my view, detract from the persuasiveness of its reasoning.
[8] Major Clients Agency, supra, 67 Cal.App.4th at p. 1130, 79 Cal.Rptr.2d 613.
[9] Major Clients Agency, supra, 67 Cal.App.4th at pp. 1124-1125, 79 Cal.Rptr.2d 613.
[10] Major Clients Agency, supra, 67 Cal. App.4th at p. 1133, 79 Cal.Rptr.2d 613. I see no error in the trial court's conclusion that Gursey was not an intended beneficiary of Wasser's legal services agreement with Pratt.
[11] The relevant question is whether, during the time it represents its client, Wasser should also have to consider the possibility of a subsequent suit for malpractice/indemnity by its client's advisors; of course Wasser would always be subject to a suit for malpractice by its own client. The majority sees no "additional" potential for conflict in these circumstances, and suspects that any self-protective conduct by the lawyer is due to the specter of suit by the client, not by the client's other advisors. I am not convinced that is so, and reiterate my view that it is more important to avoid even the possibility of dilution in the lawyer's total focus on the client's interests.
[12] At the hearing on the demurrer, Wasser's counsel argued that "here it takes a little imagination to see what the profession would come to if every time an attorney hires an expert, there would have to be a series of exculpatory letters going back and forth between the attorney and the expert..... ¶ And it would completely inhibit and chill the relationship between consultant, advisor, expert, and the attorney for the client."
[13] The majority says that a refusal to allow indemnity suits in cases of joint representation would encourage both firms to distort their representation, by spending time currying favor with the client and discrediting the other firm in order to avoid the possibility of having to bear the full financial burden of a subsequent malpractice action. This seems a bit far-fetched; I think it more likely, at least in the ordinary case, that a client subjected to malpractice by two parties wouldas in this casesue both of them, and that most professional firms would expect that course of action from the client. In any case, I am inclined to view the suggested scenario as unrealistic.
[14] Crouse v. Brobeck, Phleger & Harrison (1998) 67 Cal.App.4th 1509, 80 Cal.Rptr.2d 94.
[15] Musser v. Provencher (2001) 90 Cal. App.4th 545, 109 Cal.Rptr.2d 214.
[16] Crouse, supra, 67 Cal.App.4th at pp. 1545-1546, 80 Cal.Rptr.2d 94.)
[17] Musser, supra, 90 Cal.App.4th at p. 560, 109 Cal.Rptr.2d 214.
[18] Musser, supra, 90 Cal.App.4th at p. 560, 109 Cal.Rptr.2d 214.
[19] Musser, supra, 90 Cal.App.4th at p. 560, 109 Cal.Rptr.2d 214.
[20] Kroll & Tract, supra, 72 Cal.App.4th at p. 1545, 86 Cal.Rptr.2d 78, quoting Gibson, Dunn & Crutcher v. Superior Court (1979) 94 Cal.App.3d 347, 353, 156 Cal.Rptr. 326.
[21] I agree with the majority's second holding, that the arbitrator's decision could not and did not constitute an adjudication of Wasser's liability for the damages suffered by Pratt. Wasser was not a party to the Pratt/Gursey arbitration, and Wasser's liability was never an issue in that proceeding.